**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cv-23591-BLOOM/Louis**

HAVANA DOCKS CORPORATION,

      Plaintiff,

v.

NORWEGIAN CRUISE LINE
HOLDINGS, LTD.,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Norwegian Cruise Line Holdings,

Ltd.'s ("Norwegian" or "Defendant") Motion to Dismiss, ECF No. [31] ("Motion"). Plaintiff

Havana Docks Corporation ("Havana Docks" or "Plaintiff") filed a response, ECF No. [36]

("Response"), to which Defendant filed a reply, ECF No. [41] ("Reply"). The Court has carefully

considered the Motion, the Response and Reply, the record in this case and the applicable law, and

is otherwise fully advised. For the reasons that follow, the Motion is granted.

### I.      BACKGROUND

On August 27, 2019, Havana Docks filed this action against Defendant pursuant to Title

III of the Cuban Liberty and Democratic Solidarity Act (the "LIBERTAD Act" or "Act"). ECF

No. [1] ("Complaint"). "One of the LIBERTAD Act's purposes is to 'protect United States

nationals against confiscatory takings and the wrongful trafficking in property confiscated by the

Castro Regime.'" *Id*. ¶ 6 (citing 22 U.S.C. § 6022(6)).

Plaintiff is a United States national as defined by 22 U.S.C. § 6023(15). *Id*. ¶ 7. In the

Complaint, Plaintiff alleges that it is the rightful owner of an interest in, and claim to, certain

commercial waterfront real property in the Port of Havana, Cuba, identified as the Havana Cruise Port Terminal ("Subject Property"). *Id*. Plaintiff claims that it owned the Subject Property until the Cuban Government confiscated it in 1960. *Id*. ¶¶ 8. Plaintiff further alleges that since its confiscation, the Subject Property has not been returned and adequate and effective compensation has not been provided. *Id*. ¶ 10. Plaintiff's ownership interest in and claim to the Subject Property has been certified by the Foreign Claims Settlement Commission ("Commission") under the International Claim Settlement Act of 1949. *Id.* ¶ 12.

According to the Complaint, beginning on or about March 2017 and continuing for at least two years thereafter, Norwegian "knowingly and intentionally commenced, conducted, and promoted its commercial cruise line business to Cuba using the Subject Property by regularly embarking and disembarking its passengers on the Subject Property without the authorization of Plaintiff or any U.S. national who holds a claim to the Subject Property." *Id*. ¶ 13. At that time, Defendant is alleged to have participated in, and profited from, the Cuban Government's possession of the Subject Property without Plaintiff's authorization. *Id*. ¶ 14. Plaintiff claims that Norwegian's knowing and intentional conduct relating to the Subject Property is "trafficking" as defined in 22 U.S.C. § 6023(13)(A), and Defendant is liable to Plaintiff for all money damages allowed by statute. *Id*. ¶¶ 15-16.

Defendant has now moved to dismiss the Complaint under Rule 12(b)(6).

## II.    LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). Although the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

In the Motion, Norwegian argues that the Complaint should be dismissed for four reasons: 1) Plaintiff fails to plead sufficient facts to plausibly allege that Defendant knowingly and intentionally trafficked or traveled unlawfully; 2) applying Title III to Defendant would violate the Ex Post Facto Clause; 3) applying Title III retroactively violates the Due Process Clause; and 4) Plaintiff fails to allege that Defendant trafficked in property to which Plaintiff owns a claim. Because the Court finds the fourth issue to be dispositive, the Court considers it first.

Norwegian argues that Plaintiff's "property" as defined in the LIBERTAD Act is not at issue in the Complaint because Plaintiff's property interest in the Subject Property is a leasehold that expired in 2004, thirteen years before Norwegian ships sailed to Cuba. As such, Defendant reasons that Plaintiff can only assert a valid cause of action under Title III against an entity alleged to have trafficked in the Subject Property, to which Plaintiff owns a claim, before the time-limited concession expired in 2004. In response, Plaintiff argues that the Court already considered and rejected the same argument made previously by Carnival Corporation in a related case. *See Havana Docks Corp. v. Carnival Corp.*, Case No. 19-cv-21724, ECF No. [47]. The Court in *Carnival* agreed with Plaintiff that the interpretation suggested by Carnival (and Norwegian here) conflates a claim to a property and a property interest. *Id*. However, the Court has since found, upon further review, consideration, and analysis in another related case under similar facts, Plaintiff fails to state a claim as a matter of law, where the allegedly unlawful conduct took place after Plaintiff's concession in the Subject Property expired. *See Havana Docks Corp. v. MSC Cruises SA Co.*, Case No. 19-cv-23588, ECF No. [40]. The facts in the instant case warrant the same outcome as in *MSC Cruises*.

"The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *U.S. v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006) (internal quotations omitted). "This is so because '[t]he plain language is presumed to express congressional intent and will control a court's interpretation.'" *Moss v. GreenTree-Al, LLC*, 378 B.R. 655, 658 (S.D. Ala. 2007) (quoting *U.S. v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002) (alterations in the original)). It is a court's duty "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations omitted). And, "[w]hen interpreting a statute, words must be given their 'ordinary or natural' meaning[.]" *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004) (citation omitted). In any event, "[a] court 'should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result.'" *Moss*, 378 B.R. at 658 (quoting *Silva*, 443 F.3d at 798). With these concepts in mind, the Court considers Defendant's argument.

The Act defines "property" broadly as "any property . . . whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest." 22 U.S.C. § 6023(12)(A). The plain language of the LIBERTAD Act states that "any person . . . that traffics in property that was confiscated by the Cuban Government . . . shall be liable to any United States national who owns the claim to *such* property." 22 U.S.C. § 6082(A) (emphasis added). Thus, for example, if the interest at issue is a leasehold, following the plain language of the statute, a person would have to traffic in the leasehold in order for that person to be liable to the owner of the claim to the leasehold.

In this case, Plaintiff does not dispute that the property interest at stake is a concession that expired in 2004. Accordingly, the property interest in this case is time-limited by its terms, and the

claim that Plaintiff owns is a claim covering the time-limited interest which expired in 2004.[1] Indeed, although "claim" is not a term defined in the statute, the certification by the Commission relates only to the specific interest held by a particular party—"the court shall accept as conclusive proof of ownership of *an* interest in property a certification of a claim to ownership of *that* interest that has been made by the . . . Commission . . . ." 22 U.S.C. § 6083(a)(1). Any other interpretation of the Act would require the Court to ignore the definition of "property," and the qualifying words "such" and "that" out of the liability imposing language and conclusiveness of certified claims language, respectively—which would run afoul of basic canons of statutory interpretation. As a result, Plaintiff's claim can only extend as far as its property interest at the time of the Cuban Government's wrongful confiscation.

This interpretation is also in keeping with fundamental principles of property, which view property as a "bundle of rights." *United States v. Shotts*, 145 F.3d 1289, 1296 (11th Cir. 1998). Under this formulation, a person's interest in property can only extend as far as the particular rights from the bundle that the person has acquired. The Court therefore agrees with Norwegian's assertion that an interpretation otherwise would read the entire definition and concept of property out of Title III, effectively granting a plaintiff the right to recover compensation for trafficking in property interest that the plaintiff never owned.

The context of takings is instructive here. For example, if the government takes a person's property, be it a fee simple or lease, the government must pay just compensation for the interest that has been taken. *United States v. Gen. Motors* Corp. 323 U.S. 373, 382 (1945). Thus, if a person

---

[1] This is consistent with the International Claims Settlement Act of 1949, 22 U.S.C. § 1643, *et seq.*, which empowered the Foreign Claims Settlement Commission ("Commission") to certify the amount and validity of claims "for losses resulting from the nationalization, expropriation, intervention, or other taking of . . . property including any rights or interests therein owned wholly or partially, directly or indirectly *at the time* by nationals of the United States . . . ." 22 U.S.C. § 1643b(a) (emphasis added). Here, the property interest held by Plaintiff at the time was a time-limited concession that by its own terms expired in 2004.

has a lease, that person is entitled to the value of the lease during its applicable term. *Id.* ("When [the government] takes the property, that is, the fee, the lease, whatever he may own, terminating altogether his interest, under the established law it must pay him for what is taken, *not more . . . .*") (emphasis added); *see also Alamo Land & Cattle Co., Inc. v. Arizona*, 424 U.S. 295, 304 (1976) ("The measure of damages is the value of the use and occupancy of the leasehold *for the remainder of the tenant's term . . . .*") (quoting *United States v. Petty Motor Co.*, 327 U.S. 372, 381 (1946)) (emphasis added). As a result, reading the Act in the manner suggested by Defendant is consistent with established principles of property law.

Plaintiff's arguments suggest nevertheless that the plain language of the Act provides a cause of action to the owner of any claim to confiscated property regardless of the nature of the interest in the property, or when the trafficking took place. However, accepting Plaintiff's argument ignores the fact that the claim in this case is limited by its own terms because the claim could relate to nothing more than the time-limited concession that Plaintiff had at the time of confiscation by the Cuban Government. Ownership of a claim to a confiscated property interest does not entitle Plaintiff to recover for trafficking in other property interests.

Plaintiff also contends that Defendant's interpretation disregards that expropriation extinguished all property rights previously held by victims of Castro's confiscation. However, this contention does not withstand scrutiny. First, Defendant does not appear to dispute that the Cuban Government's confiscation extinguished Plaintiffs property rights, which is consistent with the case law. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 414-15 (1964) (determining that confiscation by Cuba "constituted an effective taking of the sugar, vesting in Cuba [the] property right in it."); *see also Glen v. Club Mediterranee S.A.*, 365 F. Supp. 2d 1263, 1269 (S.D. Fla. 2005) ("Titles III and IV of the Helms-Burton Act[] do not provide that those whose property

was taken by the Cuban Government retain *legal title* to that property. Rather, Title III permits any U.S. national 'who owns a claim to such [confiscated] property for money damages' to sue those who traffic in such property.'") (citation omitted) (emphasis in original). Second, it is not necessary to find that there is retention of any property rights for the statute to have meaning in its application. Third, applying the interpretation suggested by Plaintiff would lead to impermissibly broadening Plaintiff's property rights.

Even though there is no identified fee simple owner and it appears that the property reverted to the Cuban Government by the terms of the concession itself, Plaintiff's claim involving a time-limited concession nevertheless does not give Plaintiff the right to sue for activities that take place years after it no longer has an interest in the property. A broader interpretation would in effect give Plaintiff additional rights from the bundle to which it is not otherwise entitled. This reading is further bolstered in the statute, where it specifies that "[a]n interest in property for which a United States national has a claim certified . . . may not be the subject of a claim in an action under this section by any other person." 22 U.S.C. § 6082(a)(5)(D).

Moreover, the interpretation suggested by Plaintiff does not align with the Act's definition of "trafficking," which is defined in pertinent part as follows:

> As used in subchapter III, and except as provided in subparagraph (B), a person "traffics" in confiscated property if that person knowingly and intentionally—
>
> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
>
> (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
>
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise

> engages in trafficking (as described in clause (i) or (ii)) through
> another person,
>
> without the authorization of any United States national who holds
> a claim to the property.

22 U.S.C. § 6023(13)(A). Thus, Defendant could only "traffic" in Plaintiff's confiscated property

if it undertook one of the prohibited activities before Plaintiff's interest in the property expired.

Otherwise Defendant is "trafficking" in confiscated property for which someone else would

properly own a claim. Plaintiff's claim certifies only a time-limited concession.

Finally, the interpretation suggested by Defendant does not require that the Court ignore

the purposes of the Act. "In the interpretation of statutes, the function of the courts is easily stated.

It is to construe the language so as to give effect to the intent of Congress." *United States v. Am.

Trucking Ass'ns*, 310 U.S. 534, 543 (1940). The Act seeks to deter trafficking and provide a

remedy for such trafficking, but only as against rightful owners:

> This "trafficking" in confiscated property provides badly needed
> financial benefit, including hard currency, oil, and productive
> investment and expertise, to the current Cuban Government and thus
> undermines the foreign policy of the United States—
> [. . .]
> to protect the claims of United States nationals who had property
> wrongfully confiscated by the Cuban Government.
> [. . .]
> The international judicial system, as currently structured, lacks fully
> effective remedies for the wrongful confiscation of property and for
> unjust enrichment from the use of wrongfully confiscated property
> by governments and private entities at the expense of the rightful
> owners of the property.

22 U.S.C. § 6081(6)(B), (8). However, there is nothing to suggest that Congress intended to grant

victims of property confiscations more rights to the property than they would otherwise have

simply by virtue of the confiscation. Plaintiff is the rightful owner only of a time-limited

concession that expired in 2004. Interpreting the statute in this manner does not deprive Plaintiff

of a remedy for trafficking. Rather, it ensures that persons like Plaintiff may recover for any trafficking of their confiscated property, which in this case is a concession that but for the Cuban Government's confiscation in 1960 would have been Plaintiff's to enjoy until 2004. Thus, if Defendant's alleged activities had taken place between 1960 and 2004, it would have "trafficked" in Plaintiff's confiscated property under the Act. However, because there is no dispute that Defendant's allegedly unlawful conduct took place beginning in 2017, it did not traffic in Plaintiff's confiscated property.

As a result, Plaintiff fails to state a claim for trafficking under Title III as a matter of law, and the Court does not consider Defendant's remaining arguments.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion, **ECF No. [31]**, is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida on January 7, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record