UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:19-cv-23591-BLOOM/LOUIS

HAVANA DOCKS CORPORATION,

    Plaintiff,

vs.

NORWEGIAN CRUISE LINE HOLDINGS, LTD.,

    Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff Havana Docks Corporation ("Plaintiff") hereby sues Norwegian Cruise Line Holdings, Ltd. ("Defendant" or "NCL"), pursuant to the Cuban Liberty and Democratic Solidarity Act ("LIBERTAD Act"), for trafficking in Plaintiff's confiscated property located in Cuba.

### INTRODUCTION

The LIBERTAD Act was enacted to assist the Cuban people in regaining their freedom and prosperity, strengthen international sanctions against the communist Cuban Government, and to deter the exploitation of wrongfully confiscated property in Cuba belonging to United States nationals. Although every U.S. President has suspended the right to bring an action under the LIBERTAD Act since its enactment in 1996, the Defendant has been on notice since 1996 that trafficking in property confiscated by the communist Cuban Government without the authorization of the

owner of a certified claim to such property would subject it to liability under the LIBERTAD Act. As of the date of filing this Complaint, the United States Government has ceased suspending the right to bring an action under the LIBERTAD Act, which therefore permits Plaintiff to seek damages for the Defendant's conduct in exploiting Plaintiff's wrongly confiscated property.

## PARTIES

1. Plaintiff, Havana Docks Corporation, 215 Southland Drive, Lexington, Kentucky, 40503, is a Delaware corporation and a U.S. National under 22 U.S.C. § 6023(15)(B).

2. Defendant is a foreign corporation maintaining its principal executive offices and place of business at 7655 Corporate Center Drive, Miami, Florida 33126. Defendant operates the Norwegian Cruise Line, Oceania Cruises, and Regent Seven Seas Cruise brands.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), because Plaintiff's claim arises under 22 U.S.C. § 6021, *et seq.*, and the amount in controversy exceeds the sum or value of $50,000, exclusive of interest, costs, and attorneys' fees.

4. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(1), because the Defendant resides in the Southern District of Florida, and under 28 U.S.C. §§ 1391(b)(2) and 1391(d), because a substantial part of the events

2

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

or omissions giving rise to Plaintiff's claims occurred in the Southern District of Florida.

## THE CUBAN LIBERTY AND DEMOCRATIC SOLIDARITY ACT

5. The LIBERTAD Act was enacted on March 12, 1996. One of the LIBERTAD Act's purposes is to "protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro Regime." 22 U.S.C. § 6022(6). Title III of the LIBERTAD Act ("Title III") establishes a private right of action for money damages against any person who "traffics" in such property as defined by 22 U.S.C. § 6023(13). *See* 22 U.S.C. § 6082. Title III's effective date, August 1, 1996, was never suspended. Liability for trafficking under Title III therefore attached irreversibly beginning November 1, 1996.

## FACTUAL ALLEGATIONS

6. Plaintiff, a U.S. national as defined by 22 U.S.C. § 6023(15), is the rightful owner of an interest in and certified claim to certain commercial waterfront real property in the Port of Havana, Cuba identified specifically by the Republic of Cuba ("Cuba") as the Havana Cruise Port Terminal (the "Subject Property").

7. Plaintiff and its predecessor in interest constructed and managed the Subject Property. The Subject Property was continuously, owned, possessed, used, and managed in Cuba by Plaintiff from 1917 until the communist Cuban Government confiscated it in 1960.

8. From 1960 to present, Plaintiff has remained active for the purpose of preserving its claim to the Subject Property. Plaintiff has diligently pursued its

3

rights, filing this lawsuit on the first possible day after the United States Government ceased suspending Title III's right to bring an action. Plaintiff could not have filed this lawsuit earlier than it did due to the suspension of Title III's right to bring an action.

<u>Cuba's Confiscation of the Subject Property</u>

9.   The communist Cuban Government confiscated the Subject Property on October 24, 1960.  The communist Cuban Government maintains possession and control of the Subject Property and has not paid any compensation to Plaintiff for its seizure.

10.   More specifically, the communist Cuban Government nationalized, expropriated, and seized ownership and control of the Subject Property.  The Subject Property has not been returned and adequate and effective compensation has not been provided.  Further, the claim to the Subject Property has not been settled pursuant to an international claims settlement agreement or other settlement procedure.

11.   Plaintiff never abandoned its legitimate interest in and claim to the Subject Property.

<u>The Certified Claim</u>

12.   Plaintiff's ownership interest in and claim to the Subject Property has been certified by The Foreign Claims Settlement Commission of the United States ("FCSC"). A copy of the FCSC's Certified Claim ("Claim No.CU-2492") is attached hereto as **Exhibit A**. Claim No. CU-2492, which has no time limit and has not

4

expired, provides an itemized listing of the property interests certified by the FCSC, as follows:

> Upon consideration of the entire record, the Commission finds that the valuation most appropriate to the property and equitable to the claimant is that shown in the Balance Sheet for the year ended 1959, supported by the Trial Balance for December 31, 1958. These financial statements reflect the following book values adopted by claimant corporation:
>
> | | |
> |---|---:|
> | Land and Concession | $ 2,000,000.00 |
> | San Francisco and Machina Piers | 4,758,829.00 |
> | Santa Clara Pier | 2,110,845.00 |
> | Equipment | 419,056.00 |
> | Office Furniture and Fixtures | 90,616.00 |
> | Railroad Tracks | 22,883.00 |
> | Total | $ 9,402,229.00 |

13.  After taking into account amortization, depreciation, accrued interest, and other adjustments, the FCSC's final decision certified the loss at "Nine Million One Hundred Seventy-nine Thousand Seven Hundred Dollars and Eighty-eight Cents ($9,179,700.88) with interest thereon at 6% per annum from the respective dates of loss to the date of settlement." (**Exhibit A** at 3.)

14.  The largest portion of the loss certified in Claim No. CU-2492 consisted of the structures on the San Francisco, Machina, and Santa Clara Piers. (**Exhibit A** at 9.)

15.  A concession was one of the several property interests certified. The concession granted the Plaintiff a term of 99 years for the use of, improvement,

construction upon, operation and management of the Subject Property. The Plaintiff used, operated, managed and made significant improvements on the Subject Property from 1905 until 1960, when it was confiscated by the communist Cuban Government. The concession never expired by its term. It was confiscated by the Cuban Government in 1960. Thus, when the Subject Property was confiscated in 1960, Havana Docks still had a balance of 44 years of concessionary rights remaining; those 44 years of concessionary rights still remain in balance, and Havana Docks has never been indemnified by the Cuban Government or anyone for the loss of that property interest. As a result, under the terms of the concession and Cuban law in force at the time, Havana Docks still retains, to this day, a reversionary interest of 44 years remaining in the Subject Property (i.e., a future or contingent possessory right).

16. Further, the concession granted to the Plaintiff the contractual right to be indemnified for the value of the work constructed by it on the Subject Property in the event of expropriation, as follows:

> *Seventh:* If during the continuance of the concession the works may be expropriated by virtue of Article 50 of the Law of Ports, the government or its departments will indemnify the concessionary to the value of the work constructed by it, including the Custom House Inspectors Department and the wharf on the north side of the pier, but not the value of the machinery, rolling stock, equipment and apparatus referred to in the preceding clause, in case the concessionary may decide to remove them.

(See **Exhibit B**)

17. This indemnity right gave the Plaintiff an interest in the Subject Property that was not time-limited. As an express term of the concession, the indemnity right—which by the terms of the concession was not time limited—was

6

certified by the FCSC. The "value of the work constructed by" Havana Docks and its predecessor-in-interest include the value of the San Francisco, Machina and Santa Clara Piers, as reflected in the certified claim. This claim to indemnity remains unpaid. The LIBERTAD Act expressly contemplates this type of property interest and recognizes such an unpaid debt as an obligation that attaches to the confiscated property, as would a mechanic's lien: the LIBERTAD Act defines the term "confiscated" to include "the failure of the Cuban Government to pay, on or after January 1, 1959-- . . . a debt <u>which is a charge on property</u> nationalized, expropriated, or otherwise taken by the Cuban Government." 22 U.S.C. § 6023(4)(B)(ii) (emphasis added); *see also* 22 U.S.C. § 6023(12)(A) (defining "property" to include "any property. . . whether real, personal, or mixed, and <u>any</u> present, <u>future, or contingent right, security, or other interest therein</u>, including any leasehold interest" (emphases added)). So too does Cuban law in effect at the time of confiscation. *See e.g.,* Codigo Civil, Title II, Art. 349 ("No one shall be deprived of his property, except by competent authority and with sufficient cause of public utility, always after the proper indemnity. If this requisite has not been fulfilled the judges shall protect, and in a proper case, replace the condemned party in possession.") (emphasis added).

18.  Plaintiff has never received any compensation nor been indemnified for the expropriation of the Subject Property, including for the concession or any other property interests.

19.  Under the LIBERTAD Act, Plaintiff's ownership of Claim No. CU-2492 is a property interest in the Subject Property entitling the Plaintiff to sue under Title

7

III against whomever traffics in the Subject Property. 22 U.S.C. § 6082(a)(1)(A).

20. The terms of Claim No. CU-2492 <u>expressly state</u> that the claim does not expire until "the date of settlement." (ECF No. 24-1, at 4, 13.)  That date has not yet come. The certified claim is still actionable. Claim No. CU-2492 has no time limit.

<u>NCL's Trafficking in the Confiscated Subject Property</u>

21. On information and belief, beginning on or about March 2017 and continuing for at least two years thereafter, the Defendant knowingly and intentionally commenced, conducted, and promoted its commercial cruise line business to Cuba using the Subject Property by regularly embarking and disembarking its passengers on the Subject Property without the authorization of Plaintiff or any U.S. national who holds a claim to the Subject Property.

22. On information and belief, beginning on or about March 2017, the Defendant also knowingly and intentionally participated in and profited from the communist Cuban Government's possession of the Subject Property without the authorization of Plaintiff or any U.S. national who holds a claim to the Subject Property.

23. Defendant has had constructive knowledge of Plaintiff's publicly available certified claim to the Subject Property, Claim CU-2492, since the FCSC completed the Cuban Claims Program on July 6, 1972.

24. Defendant has had actual knowledge of Plaintiff's certified claim to the Subject Property, Claim CU-2492, since at least February 11, 2019, due to a notice letter sent by Plaintiff to it pursuant to 22 U.S.C. § 6082(a)(3)(D).

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

25. On information and belief, Defendant trafficked in the Subject Property until June 2019.

26. The Defendant's knowing and intentional conduct with regard to the confiscated Subject Property is trafficking as defined in 22 U.S.C. § 6023(13)(A).

27. As a result of the Defendant's trafficking in the Subject Property, the Defendant is liable to Plaintiff for all money damages allowable under 22 U.S.C. § 6082(a).

## CLAIM FOR DAMAGES

## TITLE III OF THE LIBERTAD ACT

28. Plaintiff incorporates by reference paragraphs 1 through 27 as if fully stated herein.

29. This claim is brought pursuant to Title III of the LIBERTAD Act, 22 U.S.C. § 6082.

30. As set forth in Title III and alleged above, beginning on or around March 2017 and continuing for at least two years thereafter, the Defendant did traffic, as that term is defined in 22 U.S.C. § 6023(13)(A), in the Subject Property which was confiscated by the communist Cuban Government on or after January 1, 1959 and is therefore liable to Plaintiff, who owns the claim to the Subject Property for money damages.

31. Plaintiff is entitled to all money damages allowable under 22 U.S.C. § 6082(a), including, but not limited to, those equal to the sum of:

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

      a.    The amount greater of: (i) the amount certified by the Foreign Claims Settlement Commission, plus interest; (ii) the amount determined by a special master pursuant to 22 U.S.C. § 6083(a)(2); or (iii) the "fair market value" of the Subject Property, plus interest;

      b.    Three times the amount determined above (treble damages); and

      c.    Court costs and reasonable attorneys' fees.

32.    As of the date of filing this Complaint, the United States Government has ceased suspending the right to bring an action under Title III, 22 U.S.C. § 6085, which therefore permits Plaintiff to seek the relief requested herein.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

    A. Ordering the Defendant to pay damages (including treble damages);

    B. Ordering the Defendant to pay pre- and post-judgment interest on any amounts awarded;

    C. Order the Defendant to pay attorneys' fees, costs, and expenses; and

    D. Ordering such other relief as may be just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable, and a trial pursuant to Rule 39(c), Federal Rules of Civil Procedure, as to all matters not triable as of right by a jury.

Dated:  April 16, 2020.

                Respectfully submitted,

                **COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

By: s/ Roberto Martínez
Roberto Martínez
Florida Bar No. 305596
bob@colson.com
Stephanie A. Casey
Florida Bar No. 97483
scasey@colson.com
Aziza F. Elayan-Martínez
Florida Bar No. 92736
aziza@colson.com
Zachary Lipshultz
Florida Bar No. 123594
zach@colson.com

- and -

**MARGOL & MARGOL, P.A.**
2029 3rd Street North
Jacksonville Beach, Florida 32250
Telephone: (904) 355-7508
Facsimile: (904) 619-8741

Rodney S. Margol
Florida Bar No. 225428
Rodney@margolandmargol.com

*Attorneys for Plaintiff Havana Docks Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court. I also certify that the foregoing document is being served this 16th day of April, 2020, on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/ Roberto Martínez
Roberto Martínez

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444