# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| HAVANA DOCKS CORPORATION,<br>    Plaintiff,<br>v.<br>CARNIVAL CORPORATION,<br>    Defendant._____/ | Case No. 19-cv-21724<br>BLOOM/MCALILEY |
| HAVANA DOCKS CORPORATION,<br>    Plaintiff,<br>v.<br>MSC CRUISES SA, et al.,<br>    Defendants._____/ | Case No. 19-cv-23588<br>BLOOM/LOUIS |
| HAVANA DOCKS CORPORATION,<br>    Plaintiff,<br>v.<br>ROYAL CARIBBEAN CRUISES, LTD.,<br>    Defendant._____/ | Case No. 19-cv-23590<br>BLOOM/LOUIS |
| HAVANA DOCKS CORPORATION,<br>    Plaintiff,<br>v.<br>NORWEGIAN CRUISE LINE HOLDINGS, LTD.,<br>    Defendant._____/ | Case No.: 19-cv-23591<br>BLOOM/LOUIS |

**PLAINTIFF HAVANA DOCKS CORPORATION'S RESPONSE
TO DEFENDANTS' OBJECTIONS TO JUDGE LOUIS'S REPORT AND
RECOMMENDATION ON PLAINTIFF'S JURY DEMAND**

Judge Louis's Report and Recommendation ("R&R," D.E. 343) correctly concludes that Havana Docks' claims under Title III of the LIBERTAD Act sound in law and thus trigger the Seventh Amendment right to trial by jury. Defendants' objections (D.E. 350) add nothing new to the arguments Judge Louis heard and rejected. For these reasons, Havana Docks' jury demand should not be stricken.

1

## I. On the nature of the claim, Defendants' urge the wrong Constitutional analysis.

While the parties agree on the four-part test that governs whether the right to jury attaches to Havana Docks' Title III claim, the Defendants misapply it. The R&R correctly summarizes the applicable law as follows:

> The analysis can be distilled into four questions: the prefatory question is (1) whether the statute demonstrates congressional intent to permit a trial by jury. If it does, the court need go no further; if it does not, the court considers whether (2) the right and (3) the remedy are legal in nature or whether they are equitable. If the court determines that, on balance, the cause of action and remedy sound in equity [sic],[1] the court then considers (4) whether Congress has permissibly delegated adjudication to an alternative tribunal in which a jury trial is unavailable.

(D.E. 343 at 6); *accord Feltner v. Columbia Pictures Television, Inc.* 523 U.S. 340, 345-47 (1998); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 50-53 (1989).

The R&R recognizes that the LIBERTAD Act is silent on whether Title III claims should be tried by jury, and neither party disagrees. The first Constitutional inquiry is therefore inapplicable.

Defendants' errors thus begin with the second and third inquiries, which require comparing Title III claims to those traditionally pursued at law, at equity, and at admiralty, to decide which body of law compares most favorably. "To determine whether a statutory cause of action is more analogous to cases tried in court of law than to suits tried in court of equity or admiralty," the Supreme Court pronounced in *Feltner*, "we examine both the nature of the statutory action and the remedy sought." *Feltner*, 523 U.S. at 348. If a cause of action has no analog in any of these bodies

---

[1] Although the last sentence of the quoted passage refers to actions and remedies that "sound in equity," the context indicates that the Court meant to say, "sound in law." There is no need to consider whether Congress appointed alternative tribunals as factfinders if a claim sounds in equity, where the right to jury trial does not attach.

2

of law, then by default the right to jury trial attaches. "In a just sense, the [Seventh] [A]mendment … may well be construed to embrace all suits *which are not of equity and admiralty jurisdiction*, whatever might be the peculiar form which they may assume to settle legal rights." *Curtis v. Loether*, 415 U.S. 189, 193 (1974) (emphasis added) (*quoting Parsons v. Bedford*, 3 Pet. 433, 446-47 (1830) (Story, J.)).

Regarding the nature of the claim, Title III has numerous features that compare favorably to traditional actions at law. Title III claims resemble components of common law torts for *trespass on the case, trover, trespass quare clausum fregit,* and *ejectment,* though none are a perfect match. (*See* D.E. 343 at 9-10).[2] The statute also protects personal property rights and deters future misconduct, hallmarks of actions at law, not at equity. (*See* D.E. 343 at 10). *See also City of Monterey v. Del Monte at Monterey Ltd.*, 526 U.S. 687, 723 (1999) (Scalia, J., concurring) (observing that protecting personal property rights and deterring future misconduct are functions belonging to actions at law). In addition, Title III claims are essentially comprised of duty (*i.e.*, to refrain from trafficking), breach, and damages, features comparable to traditional negligence claims. The issues framed by Title III therefore closely resemble actions at law. *See Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 569 (1990) ("The Seventh Amendment question depends on the nature of the *issue* to be tried rather than the character of the overall action.") (*citing Ross v. Bernhard*, 396 U.S. 531, 538 (1970)).

Admittedly, Title III also has aspects that are unique, such as how damages are measured and the President's suspension authority. (*See* D.E. 343 at 11). But these features have no analog to claims at law *or* at equity or admiralty as they existed at common law. As noted earlier, where

---

[2] *See also* D.E. 254 at 5-9 (discussing the similarities between these common law torts and Title III claims).

no historical analog exists in *any* body of law, the right to trial by jury applies. *See Curtis*, 415 U.S. at 193; *Parsons*, 3 Pet. at 446-47.

In opposition, the Defendants fail to undertake the appropriate Constitutional analysis. Their first error is arguing that because Title III has features alien to both traditional actions at law and at equity, the Seventh Amendment does not reach Title III claims. (*See e.g.,* D.E. 239 at 8) ("[I]f [a Title III] action is not analogous to a common-law cause of action, then the Seventh Amendment does not apply, even if the action would also have been foreign to equity courts as well."). *Curtis* and *Parsons* are directly contrary.

Second, the relevant question is not whether Title III claims have new and novel features, as Defendants urge, but whether on balance Title III claims are *more analogous to traditional claims at law or at equity. See Feltner*, 523 U.S. at 348; *accord Chauffeurs, Teamsters & Helpers*, 494 U.S. at 569 (comparing claim for a union's duty of fair representation to traditional claims at law and at equity and finding commonalities with both bodies of law). "Courts examine historical analogues to a statutory cause of action for one limited purpose: to ascertain whether the statutory claim more closely resembles an action at law that was decided historically by a jury or an action in equity that was decided historically by a judge." *Sibley v. Futon Dekalb Collection Svc.*, 677 F.2d 830, 833 (11th Cir. 1982). Neither the Defendants' motion to strike, nor their reply, nor their objections ever undertake this analysis. (*See* D.E. 112 at 9-12; D.E. 239 at 2-8; D.E. 350 at 3-6).

Faced with common law torts bearing some resemblance to Title III and *no* comparable similarities to any actions at equity, the comparison to actions at law prevails. Title III's similarities to common law torts weigh "in favor of finding that the right to be adjudicated under the [LIBERTAD] Act is a legal one," particularly given the absence historical analogs to claims in

4

equity. (D.E. 343 at 11). Defendants' arguments employ the wrong analysis. Their objections should be overruled.

## II. Title III's remedy is for money damages, the traditional remedy afforded to actions *at law*.

Turning to the next Seventh Amendment inquiry, the nature of the remedy, Judge Louis correctly determined that Title III's remedy of "money damages" weighs in favor of a right to jury trial.[3] As the Supreme Court has repeatedly admonished, "the 'general rule,' [is] that monetary relief is legal." *Feltner*, 523 U.S. at 352; *accord Wooddell v. Int'l Brotherhood of Elec. Workers, Local 71,* 502 U.S. 93, 97 (1991); *Granfinanciera,* 492 U.S. at 46. Moreover, between the nature of the claim and the nature of the remedy afforded, the nature of the remedy "is more important" to the Seventh Amendment inquiry. *Chauffeurs, Teamsters & Helpers*, 494 U.S. at 565.

The monetary damages available under Title III bear all the traditional traits of compensatory damages awarded at law, as opposed to the limited forms of monetary relief available in equity. As the Supreme Court observed, "[o]ur cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order … for 'the recovery of specific property *or monies* …'". *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (internal citation omitted). Money damages are compensatory when they "are given to the plaintiff to substitute for a suffered loss." *Id.* at 895 (internal citation omitted). But in the rare occasions where money is recoverable in equity, such as for restitution or disgorgement, the money awarded is not a substitute at all, but a form of *specific relief—*"[an] attempt to give the plaintiff the very thing to which he was entitled."

---

[3] *See* 22 U.S.C. §§ 6082(a)(1)(A).

5

*Id.* (internal citation omitted).

Title III's damages are clearly compensatory. Unlike equitable restitution, Title III does not permit Havana Docks to restore the "very thing" taken from it: the docks, piers, buildings, equipment, and concession confiscated by the Cuban government. Nor does it contemplate transferring ownership of the profits generated from the confiscated property from Defendants to Havana Docks, a type of specific performance that equitable disgorgement envisions. It instead awards Havana Docks a monetary substitute for its dispossessed property. Using money as a proxy to compensate what was taken, rather than to carry out specific performance, is a remedy entrusted only to courts of law. *See, e.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (observing that an action seeking monetary compensation for a loss caused by a defendant's breach of duty sounds in law, not equity).

In addition, Title III's stated goal of "deterrence" and its allowance of treble damages are features that denote an action at law. *See* 22 U.S.C. § 6081(11); 22 U.S.C. § 6082(a)(1)(C); *Tull v. United States*, 481 U.S. 412, 423 (1987) (holding that monetary awards designed to deter future wrongdoing or penalize past misbehavior were "traditionally only available in a court of law"); *Curtis,* 415 U.S. at 196 (holding that a claim for "actual and punitive damages" seeks remedies traditionally only available in actions at law); *Fleitmann v. Welsbach Street Lighting Co. of America*, 240 U.S. 27, 29 (1916) (interpreting a statute authorizing treble damages as creating a remedy at law to which the right to a jury trial attaches).

Arguing that the damages available under Title III should be construed as equitable relief, Defendants' objections fail to dislodge the general rule that money damages are a remedy at law, as Judge Louis correctly found.

First, Defendants advance the argument that Title III damages are restitution that restore

6

the particular property Havana Docks lost—a position Defendants adopt despite acknowledging that Havana Docks will not, in fact, get its confiscated property back. (*See* D.E. 350 at 10-11). Awarding "the value of the property which was confiscated," Defendants argue, "is akin to equitable restitution" because it gives Havana Docks the value of the property "as it stands today." *Id.* at 10. But the remedy the Defendants describe—a judgment for the confiscated property's *value*, not for the return of the property itself—is a clear, unmistakable alternative to what Havana Docks has lost. Defendants' argument should accordingly be rejected. It misunderstands altogether the boundary between compensatory damages available at law and the type of specific performance that a claim for equitable restitution demands. *See, e.g., Bowen*, 487 U.S. at 893-95 (distinguishing between a judgment compelling the restoration of specific funds and a judgment ordering monetary damages as a substitute for what the claimant has lost).

Next, the Defendants' inaccurately compare Title III damages to disgorged profits because Title III's goals include denying profits for trafficking in confiscated property. But the Defendants concede that Title III's remedy "is not linked to any profits made by [the] Defendants," a fact that dooms their comparison. (D.E. 350 at 11). Because the ownership of Defendants' profits is not at issue, the doctrine of equitable disgorgement does not apply. *See, e.g., Liu v. S.E.C.*, 140 S.Ct. 1936, 1943 (2020) (observing that equitable disgorgement is characterized as "a remedy tethered to a wrongdoer's net unlawful profits," regardless of the name it travels by).[4]

Third, Defendants argue that because the International Claims Settlement Act (the

---

[4] Although Defendants cite to *Fair Isaac Corp. v Fed. Ins. Co.*, 408 F. Supp. 3d 1019 (D. Minn. 2019), as support for their disgorgement argument, they misstate its holding. *Fair Isaac* held that disgorging profits was an equitable remedy when sought in addition to actual damages, though in other contexts disgorgement can also be a remedy at law. *Id.* at 1026-31. Because Defendants concede that Title III's remedy is *not* linked to Defendants' profits in any form, *Fair Isaac* is inapposite.

legislation by which Havana Docks certified its claim) invokes "principles of international law, justice and equity," and elsewhere talks of using "equitable" methods to measure damages, actions to recover certified claims are inherently equitable. (*See* D.E. 350 at 12) (*citing* 22 U.S.C. § 1623). But the bare mentioning of the words *equity* and *equitable* is thin bedrock for the load Defendants wish to carry. The terms frequently mean nothing more than *fair* or *just*. *See* EQUITY, Black's Law Dictionary (11th ed. 2019) ("1. Fairness; impartiality; evenhanded dealing …"); EQUITABLE, Black's Law Dictionary (11th ed. 2019) ("1. Just; consistent with principles of justice and right.").[5] Absent more, using these terms in a statute does not support construing monetary damages under Title III as an equitable remedy.

Last, Defendants contend that Title III's treble damages provision does not conclusively demonstrate a legal remedy, arguing that not every claim for exemplary damages triggers the Seventh Amendment right to trial by jury. But the case Defendants rely upon, *Swofford v. B & W, Inc.*, 336 F.2d 406 (1964) (5th Cir. 1964), is inapposite. *Swofford* addressed a statute that specifically consigned the question of exemplary damages to the presiding judge instead of the jury. *See id.* at 413 (noting that 35 U.S.C. § 284 (1958) gives the trial judge express authority to assess treble damages). The case therefore exemplifies the principle that Congress can entrust decisions on new statutory remedies to non-juries where the statute's text expressly does so—the *first* Constitutional inquiry Judge Louis identified in her R&R, and an inquiry that (as noted earlier) the text of Title III does not answer. *Swofford* is inapplicable.

Moreover, Defendants fail to cite *any* case where a court construed exemplary damages as an equitable remedy. The caselaw instead points the other way. Deterrence and retribution are

---

[5] In Black's, the reader must scroll all the way to *Equity's* fourth definition to arrive at "the system of law originating in the English Court of Chancery." For the term *Equitable*, a reference to English Chancery law appears in the term's second definition.

8

solely the concern of suits at law. *See Tull*, 481 U.S. at 423 (construing a statute with the goals of deterrence and retribution as an action sounding in law); *Fleitmann*, 240 U.S. at 29 (holding that a treble damages provision triggered the right to trial by jury).[6]

In sum, the law supports Judge Louis's conclusion that "the nature of the remedy sought by [Havana Docks] under the Act is legal." (D.E. 343 at 14). Defendants' opposing argument should be rejected, and its objections overruled.

### III. The "Public Rights" exception to jury trials in inapplicable.

Turning to the final Seventh Amendment inquiry, whether Congress delegated Title III claims to a non-jury administrative body for resolution, the unambiguous answer is no, it did not. Title III's text explicitly entrusts "the courts of the United States" with the task of resolving Title III claims. *See* 22 U.S.C. § 6081(11). That ends the inquiry. "[I]f an action must be tried under the auspices of an Article III Court," as opposed to being entrusted to an administrative body to resolve, "then the Seventh Amendment affords the parties a right to a jury trial whenever the cause of action is legal in nature." *Granfinanciera*, 492 U.S. at 53.

Though Defendants spend four pages arguing that Title III claims involve the type of "public rights" that Congress *could* entrust to an administrative body (*see* D.E. 350 at 5-8), they devote scant attention to Title III's actual text, which, as noted above, does not do so. Misapplying the appropriate Constitutional inquiry once again, every one of Defendants' arguments for invoking the "public rights" exception to the Seventh Amendment should be rejected. None

---

[6] Although Defendants contend that *Fleitmann* was not a Constitutional decision, citing the Fifth Circuit in *Swofford*, the Supreme Court clarified a line of cases that included *Fleitmann* after *Swofford* was handed down. *See Curtis*, 415 U.S. at 194. "Whatever doubt may have existed," the Court proclaimed, "should now be dispelled." *Id.* "The Seventh Amendment … appl[ies] to actions enforcing statutory rights … if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Id. Fleitmann* thus firmly supports finding that claims for exemplary damages trigger the Constitutional right to jury trial.

overcome the conclusive weight of the statute's plain text and unambiguous meaning.

Judge Louis's analysis turning away the Defendants' "public rights" arguments bears repeating here:

> In describing the nature of the rights adjudicated under [Title III], Defendant[s] refer[] to them as 'public rights,' in part basing [their] argument on *Granfinanciera's* observation that an exception to the right to a jury for legal causes of action arises when certain public rights are implicated, and Congress elects to entrust adjudication to an alternative [non-jury] administrative process …. Here, though Congress delegated to the [Federal Claims Settlement Commission] the ability to render determination as to claim value … it created no federal regulatory scheme for an alternative non-Article III process as far as liability is concerned—to the contrary, the statute explicitly confers the right to bring suit in an Article III court—and there is accordingly no alternative process to be hampered by the imposition of a jury as a factfinder. The Act thus does not implicate the type of 'public rights' considered by the Court in *Grandfinanciera* [as appropriately assignable to an non-jury administrative body].

(D.E. 343 at 8).

### IV.  Conclusion

Judge Louis's R&R should be adopted in full. It correctly resolves each of the four inquiries demanded by the Seventh Amendment's jurisprudence, giving due weight to the features of Title III claims that resemble traditional actions at law, and adhering to precedents that overwhelmingly construe money damages as a legal remedy. Defendants' objections, by comparison, misinterpret the caselaw and misapply the governing inquiry. They should be overruled.

Dated:  February 8, 2022.

[Signatures on following page.]

10

Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

By: *Roberto Martínez*
Roberto Martínez
Florida Bar No. 305596
Bob@colson.com
Stephanie A. Casey
Florida Bar No. 97483
scasey@colson.com
Aziza F. Elayan-Martínez
Florida Bar No. 92736
aziza@colson.com
Zachary A. Lipshultz
Florida Bar No. 123594
zach@colson.com
Thomas Kroeger
Florida Bar No. 19303
tom@colson.com
Wm. Allen Bonner
Florida Bar No. 27508
allen@colson.com

- and –

**MARGOL & MARGOL, P.A.**
2029 3rd Street North
Jacksonville Beach, Florida 32250
Telephone: (904) 355-7508
Facsimile: (904) 619-8741

Rodney S. Margol
Florida Bar No. 225428
Rodney@margolandmargol.com

*Attorneys for Plaintiff Havana Docks Corporation*