UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-23591-BLOOM/Louis

HAVANA DOCKS CORPORATION,

   Plaintiff,

v.

NORWEGIAN CRUISE LINE
HOLDINGS, LTD.,

   Defendant.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATIONS**

**THIS CAUSE** is before the Court upon Defendant Norwegian Cruise Line Holdings, LTD.'s ("Norwegian" or "Defendant") Motion to Strike Plaintiff's Jury Trial Demand, ECF No. [197] ("Motion"). Plaintiff Havana Docks Corporation ("Havana Docks" or "Plaintiff") filed a Response in Opposition, ECF No. [254] ("Response"), to which Defendant filed a Reply, ECF No. [264] ("Reply").[1]

Magistrate Judge Lauren Louis issued a Report and Recommendations, recommending that the Motion be denied. ECF No. [343] ("R&R"). Norwegian, along with Defendants in three related cases, Carnival Corporation, MSC Cruises S.A. et al., and Royal Caribbean Cruises, Ltd. (collectively, "Defendants"), timely filed Objections, arguing that the Motion should be granted. ECF No. [350] ("Objections"). Plaintiff filed its Responses to the Objections. ECF No. [353] ("Response to the Objections"). The Court has conducted a *de novo* review of the R&R and the

---

[1] Defendants in the three related cruise line cases, (1) Carnival Corporation (No. 19-cv-21724); (2) MSC Cruises S.A. et al. (No. 19-cv-23588); and (3) Royal Caribbean Cruises, Ltd. (No. 19-cv-23590), also filed Motions to Strike Plaintiff's Jury Trial Demand.

Case No. 19-cv-23591-BLOOM/Louis

record in this case in accordance with 28 U.S.C. § 636(b)(1)(C). *See Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)). For the reasons set forth below, the Court determines that Defendants' Objections are without merit. The Court thus adopts the R&R.

I.     **BACKGROUND**

On August 27, 2019, Havana Docks filed this action against Defendant pursuant to Title III of the Cuban Liberty and Democratic Solidarity Act ("LIBERTAD Act" or "Act"). ECF No. [1] ("Complaint"). In the Complaint, Plaintiff alleges that it is the rightful owner of an interest in, and claim to, certain commercial waterfront real property in the Port of Havana, Cuba, identified as the Havana Cruise Port Terminal ("Subject Property"). *Id*. Plaintiff claims that it owned the Subject Property until the Cuban Government confiscated it in 1960. *Id*. ¶ 8. Plaintiff further alleges that since its confiscation, the Subject Property has not been returned and adequate and effective compensation has not been provided. *Id*. ¶ 10. Plaintiff's ownership interest in and claim to the Subject Property has been certified by the Foreign Claims Settlement Commission ("FCSC") under the International Claim Settlement Act of 1949 ("ICSA"). *Id*. ¶ 12.

According to the Complaint, beginning on or about March 2017 and continuing for at least two years thereafter, Norwegian "knowingly and intentionally commenced, conducted, and promoted its commercial cruise line business to Cuba using the Subject Property by regularly embarking and disembarking its passengers on the Subject Property without the authorization of Plaintiff or any U.S. national who holds a claim to the Subject Property." *Id*. ¶ 13. At that time, Defendant is alleged to have participated in, and profited from, the Cuban Government's possession of the Subject Property without Plaintiff's authorization. *Id*. ¶ 14. Plaintiff claims that Norwegian's knowing and intentional conduct relating to the Subject Property is "trafficking" as

defined in 22 U.S.C. § 6023(13)(A), and Defendant is liable to Plaintiff for all money damages allowed by statute. *Id*. ¶¶ 15-16.

On August 27, 2021, Norwegian filed the instant Motion to strike Plaintiff's jury demand, arguing that Plaintiff is not entitled to a trial by jury. *See* ECF No. [197]. Plaintiff filed its Response, arguing that Plaintiff is entitled to a trial by jury. *See* ECF No. [254]. Norwegian's Reply followed. *See* ECF No. [264]. On January 11, 2022, Magistrate Judge Louis issued her R&R, recommending that the Motion be denied. *See* ECF No. [343]. The R&R states that: (1) the Act does not explicitly confer a right to a jury trial; (2) the right to be adjudicated under the Act is a legal right; and (3) the Act offers a remedy at law. *See id.* at 6-14. On January 25, 2022, Defendants filed their Objections, arguing that Magistrate Judge Louis erred because: (1) a claim under the Act has no analogy to any action at law; and (2) the remedy under the Act is equitable in nature. *See* ECF No. [350] at 3-15. On February 8, 2022, Plaintiff filed its Response to the Objections. *See* ECF No. [353].

## II. LEGAL STANDARD

### a. Objections to Magistrate Judge's R&R

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)) (alterations omitted). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the report and recommendation to which objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also*

Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001). A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1).

b. **Right to Jury Trial**

The right to a jury trial arises from a statutory grant or the Seventh Amendment. Courts addressing this issue must first analyze the statute to "ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999) (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998); *Tull v. United States*, 481 U.S. 412, 417, n.3, (1987); *Curtis v. Loether*, 415 U.S. 189, 192, n.6 (1974)). If the language and legislative history of the statute are silent regarding the right to a jury trial, the court "must [then] answer the constitutional question presented." *Tull*, 481 U.S. at 417 n.3; *see also Feltner*, 523 U.S. at 345. That is, the court must determine whether the Seventh Amendment applies. *See AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1373-74 (11th Cir. 2021) (quoting *City of Monterey*, 526 U.S. at 718).

The Seventh Amendment provides that for "suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). As stated by the Supreme Court in *Parsons v. Bedford*, 3 Pet. 433, 446-47 (1830), the phrase "common law" as used in the Seventh Amendment was intended to stand in contrast to suits in equity. Accordingly, "common law" in this context translates into "suits in which legal rights were to be ascertained and determined, in

4

contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A.*, 492 U.S. at 41 (internal quotations, citation, and emphasis omitted). The right to a jury trial thus extends to causes of action where the statute creates legal rights and legal remedies, even when the statute does not expressly create the right to a jury trial. *Curtis*, 415 U.S. at 194.

In determining whether the claim in question sounds in law, courts must compare the action to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity," and second, examine "the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera*, S.A., 492 U.S. at 42 (quoting *Tull*, 481 U.S. at 417-18) (internal quotations omitted). The question is whether these two considerations suggest that an action concerns a legal right with legal remedies and thus confer a right to a trial by jury under the Seventh Amendment. *Id.*

However, a court's analysis of the two *Granfinanciera* factors must take into consideration that while Congress is constitutionally precluded from stripping the right to a jury trial for the adjudication of private rights, the same is not true insofar as public rights are concerned. *Id.* at 52. Where Congress "devise[s] a novel cause of action involving public rights" and tasks adjudication of the novel cause of action to a tribunal lacking statutory authority to employ a jury as the factfinder, no right to a jury trial attaches to the cause of action. *Id.* at 51-52. Public rights include those seemingly private rights created by Congress that are "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Id.* at 54. In the context of such administrative proceedings, the Supreme Court has observed that "jury trials would be incompatible with the whole concept of administrative adjudication and would substantially interfere with the [administrative agency]'s

5

role in the statutory scheme." *Curtis*, 415 U.S. at 194 (citing *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937)). In sum, "[u]nless Congress . . . has permissibly withdrawn jurisdiction over [an] action by courts of law and assigned it exclusively to non-Article III tribunals sitting without juries, the Seventh Amendment guarantees [litigants] a jury trial upon request." *Granfinanciera*, S.A., 492 U.S. at 49.

Therefore, in determining the right to a jury trial, courts must address: (1) whether the statute at issue demonstrates congressional intent to permit a trial by jury; (2) whether the right and the remedy are legal in nature; and (3) whether Congress has permissibly delegated adjudication of any claims pursuant to the statute to an alternative tribunal in which a jury trial is unavailable.

### III. ANALYSIS

In their Objections, Defendants argue that Magistrate Judge Louis erred because: (1) the claim under the Act has no analogy to any action at law; and (2) the remedy under the Act is equitable in nature. *See* ECF No. [350].[2] The Court addresses each objection in turn.

#### a. Legal Right

Defendants first argue that Magistrate Judge Louis erred because the claim under the Act has no analogy to any action at law. *See* ECF No. [350] at 3-9. Defendants' primary contention is that Plaintiff's cause of action is against a third-party, not the wrongdoer, which is materially different from traditional tort claims that are asserted against the wrongdoer to recover damages from the wrongdoer. *See id.* at 3. Defendants also argue that, unlike the claim in question, common law tort claims do not allow the President or diplomatic developments to extinguish a plaintiff's cause of action. *See id.* at 6-7. Further, no common law tort claim allows an administrative agency

---

[2] The Parties agree that the Act does not expressly provide the right to a jury trial. *See* ECF Nos. [350] at 2, [353] at 2.

to determine certain aspects of the claim, but the Act entrusts determination of the value of the claim to the FCSC. *See id.* at 4-5. Defendants argue, therefore, that the Act establishes rights that are more analogous to public rights that do not require a trial by jury. *See id.* at 8-9.

Plaintiff responds that the claim has numerous features that compare favorably to traditional actions at law, namely trespass on the case, trover, trespass *quare clasum fregit*, and ejectment. *See* ECF No. [353] at 3. Plaintiff also argues that although the Act involves novel features, on balance, the claim is more analogous to traditional actions at law than actions at equity. *See id.* at 4. Plaintiff further argues that the public rights exception to jury trials is inapplicable in this case even if certain aspects of the claim may be entrusted to the FCSC. *See id.* at 9-10.

The Court agrees with Plaintiff. As the R&R correctly notes, none of the common law tort claims is an exact match to the claim under the Act, but elements of each resemble the claim in question such that the claim could be considered analogous to common law tort claims. *See* ECF No. [343] at 9-10.[3] The Supreme Court held in *Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry* that "[t]he Seventh Amendment question depends on the nature of the *issue* to be tried rather than the character of the overall action." 494 U.S. 558, 569 (1990) (emphasis in original) (*citing Ross v. Bernhard*, 396 U.S. 531, 538 (1970)). In this case, the issues that must be tried are some of the same types of issues that must be tried in a case involving traditional tort claims: duty, breach, and damages. That is, Plaintiff must prove Defendants' duty to refrain from trafficking on the Subject Property, Defendants' breach of that duty, and Plaintiffs' damages. Even though the Act may involve novel aspects, such as the fact that the claim is against a self-styled "third-party"

---

[3] To the extent that Defendants attempt to draw a distinction between the R&R's use of the term "resemblance" and the Supreme Court's use of the term "analog," ECF No. [350] at 3, the Court is not persuaded. The Court considers the terms to be interchangeable in this context. Even if they were not interchangeable, the Court considers the claim at issue to be analogous to the aforementioned tort law claims for the same reasons the R&R considers the claim at issue to resemble the aforementioned tort law claims.

(i.e., Defendants), not the "wrongdoer" (i.e., the Cuban Government), and that the President or diplomatic developments may foreclose Plaintiff's right to the claim, the specific issues that must be tried – which are the focus of the Court's analysis – indicate that the claim being adjudicated is analogous to common law tort claims.

For the sake of argument, even if this Court were to deviate from the Supreme Court's express holding to focus on the issues to be tried and the Court were to determine that there are too many novel features that distinguish this claim from common law tort claims, it is apparent that this claim has no analogs to actions in equity. When there are no historical analogs to actions in law or equity, the Supreme Court has stated that the Seventh Amendment should be construed to embrace the action in question as an action at law. *See Curtis*, 415 U.S. at 193 (quoting *Parsons v. Bedford*, 3 Pet. 433, 446-47 (1830) (Story, J.)) ("In a just sense, the [Seventh] [A]mendment . . . may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever might be the peculiar form which they may assume to settle legal rights."). Therefore, Defendants' argument is unavailing.

Lastly, to the extent that Defendants argue that the public rights exception to jury trials applies because the Act allows an administrative agency to determine certain aspect of the claim, *see* ECF No. [350] at 8-9, the Court is not persuaded. As Plaintiff correctly argues, the text of the statute itself makes clear that the Act entrusts "the courts of the United States" with the task of resolving claims under the Act. *See* ECF No. [353] at 9 (quoting 22 U.S.C. § 6081(11)). The R&R accurately notes that "though Congress delegated to the FCSC the ability to render determinations as to claim value in the Act, it created no federal regulatory scheme for an alternative non-Article III adjudicative process insofar as liability is concerned—to the contrary, the statute explicitly confers the right to bring suit in an Article III court—and there is accordingly no alternative

administrative process to be hampered by the imposition of a jury as a factfinder." ECF No. [343] at 8. The Court similarly concludes that while the FCSC may determine a part of the claim, there is no alternative non-Article III adjudicative process for the public rights exception to jury trials to apply. In other words, the Court is not convinced that the FCSC's involvement makes this Court's adjudication of the claim to be "so closely integrated into a public regulatory scheme" such that the claim would be "appropriate for agency resolution with limited involvement by the [this Court]." *Granfinanciera, S.A.*, 492 U.S. at 54.

In sum, the R&R correctly concludes that the claim involves a legal right, and Defendants' objection on this issue is without merit.

### b. Legal Remedy

Defendants raise several arguments in regard to the R&R's determination that the Act provides a legal remedy. *See* ECF No. [350] at 9-15. First, Defendants argue that the Act sets forth an equitable remedy rather than a legal remedy because the remedy seeks to restore the value of the confiscated property. *See id.* at 9-11. Second, Defendants argue that because the measure of damages is based on current property value, the remedy is akin to equitable restitution that takes into consideration the increase in value. *See id.* at 11. Third, Defendants aver that characterizing the damages as equitable disgorgement is accurate because the damages are disconnected from the harm Defendants allegedly caused and the Act intends to prevent traffickers from keeping any "profits." *See id.* at 12. Fourth, Defendants claim that the R&R mistakenly relies on *Tull*, 481 U.S. at 423-24, to conclude that even if the damages were calculated using profits, the remedy should still not be characterized as equitable disgorgement. *See id.* at 12. According to Defendants, *Tull* concerned the Clean Water Act that allowed the Government to impose civil fines thus making the Clean Water Act punitive in nature and any damages inherently legal. *See id.* at 12-13. In contrast,

9

the LIBERTAD Act does not allow the Government to impose civil fines, and therefore, the damages are not punitive in nature and not inherently legal. *See id.*

Fifth, Defendants argue that the ICSA includes text suggesting that the ICSA is intended to provide equitable remedies. *See id.* at 13 (citing variations of the term "equity" in 22 U.S.C. § 1623(a)(2)(B)). Lastly, Defendants argue that the R&R's conclusion regarding treble damages and its reliance on *Fleitmann v. Welsbach St. Lighting Co. of Am.*, 240 U.S. 27, 29 (1916), are mistaken. *See id.* at 14. According to Defendants, *Fleitmann* only stands for the proposition that the right to a trial by jury pursuant to treble damages is a statutory right, rather than a Seventh Amendment right. *See id.* Instead, Defendants rely on *Swofford v. B&W, Inc.*, 336 F.2d 406, 414 (5th Cir. 1964), to argue that treble damages do not necessarily establish the right to a jury trial. *See* ECF No. [350] at 14.

Plaintiff argues that the R&R correctly determined that the Act calls for a legal remedy because monetary damages are traditionally a remedy afforded to actions at law. *See* ECF No. [353] at 5. Plaintiff further argues that in the rare occasion that money damages are recoverable in equity, such as for restitution or disgorgement, the money awarded is not a substitute for the loss but a form of specific relief meant to return to the plaintiff the "very thing to which he was entitled." *See id.* (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988)). Plaintiff argues that in this case, the money damages are compensatory because the Act does not contemplate the return of the "very thing" taken from Plaintiff, namely Plaintiff's interest in the docks. *See id.* at 5-6. According to Plaintiff, the monetary damages are intended to compensate Plaintiff for its loss, rather than to carry out the specific performance of returning Plaintiff's interest in the docks. *See id.*

Further, Plaintiff argues that the doctrine of equitable disgorgement does not apply because the remedy in this case is not tied to Defendants' profits, which is an essential characteristic of equitable disgorgement. *See id.* at 7. In regard to Defendants' argument that the ICSA includes variations of the term "equity," Plaintiff argues that the term conveys "fair" or "just," rather than "the system of law originating in the English Court of Chancery." *Id.* at 8. Lastly, Plaintiff claims that the Act's stated goal of "deterrence" and treble damages indicate that the Act sets forth damages for an action at law rather than equity. *See id.* at 6. Plaintiff argues that Defendants' reliance on *Swofford* for the contention that the treble damages provision weighs in favor of equitable damages is mistaken. *See id. Swofford* involved a statute that expressly consigned the question of treble damages to the presiding judge instead of the jury. *See id.* Plaintiff avers that *Swofford*, therefore, exemplifies a court's analysis of the first Constitutional inquiry, which is not applicable in this case because the Act does not expressly state congressional intent for a jury trial. *See id.*

> The Court agrees with Plaintiff. The Supreme Court has determined that:
>
> [o]ur cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for 'the recovery of specific property *or monies,* ejectment from land . . . '

*Bowen*, 487 U.S. at 893 (emphasis in original) (quoting *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688 (1949)). In this case, it is apparent that the Act's monetary damages are intended to compensate Plaintiff's suffered loss, namely the loss of its property interest. By allowing a monetary award for the current value of the property interest, rather than the property interest itself, the Act seeks to compensate Plaintiff for its loss instead of returning to Plaintiff the "very thing" to which it is entitled. *Bowen*, 487 U.S. at 893. The Court considers such a monetary

11

award to be a compensatory, legal remedy.[4] The Act also does not involve the restoration of specific monies that were wrongfully withheld, akin to backpay or unpaid employment benefits. That is, the case will not result in an order compelling the payment of wrongfully withheld monies, which would be considered an equitable remedy that requires the payment of money only as a practical matter. Rather, the Act calls for monetary damages to compensate Plaintiff for its injury, which is clearly not a belated payment of wrongfully withheld sums of money. As such, Defendant's first two arguments are unavailing.

To the extent that Defendants argue that the damages should be characterized as disgorgement because the Act contains language preventing traffickers from keeping any profits, *see* ECF No. [350] at 12, the Court is not persuaded. The remedy in this case is not tied to Defendants' profits but the value of the property interest. As the Supreme Court recently stated, equitable disgorgement is characterized by a "remedy tethered to a wrongdoer's net unlawful profits." *Liu v. Sec. & Exch. Comm'n*, 140 S.Ct. 1936, 1943 (2020). Because the remedy is not related to Defendants' profits in this case, the damages cannot be considered equitable disgorgement.[5]

---

[4] To the extent that Defendants argue that Plaintiff seeks as damages the current value of the property and such damages are akin to equitable restitution, *see* ECF No. [350] at 11, the Court is not persuaded. Defendants cite to no legal authority that definitively establishes that a remedy that takes into account the increase in the value of confiscated property is an equitable remedy. *See id.* Defendants' citations to *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) and Restatement (First) of Restitution § 160 cmt. 7 (1937) do not expressly address Defendants' contention. Even if the Court were to adopt Defendants' position on this issue, this argument alone would fail to overcome the presumption that monetary damages are traditionally a remedy afforded to actions at law. *See Feltner*, 523 U.S. at 352; *Granfinanciera*, 492 U.S. at 46.

[5] Because the damages are not tied to Defendants' profits, the Court need not consider Defendants' argument that the R&R misapplied *Tull*, 481 U.S. at 423-24. *See* ECF No. [350] at 12-13. As Defendants note, the R&R relied on *Tull* to conclude that *even if* the damages were tied to Defendants' profits, the damages may nonetheless be a legal remedy. *See* ECF No. [343] at 13-14. In this case, the damages are not tied to Defendants' profits, and *Tull* is inapposite.

Next, Defendants' argument that the ICSA includes provisions indicating that the ICSA is intended to provide an "equitable" remedy is also unavailing. *See* ECF No. [350] at 13. As Plaintiff rightly notes, the ICSA appears to use the term "equitable" to mean "fair" or "just" rather than to refer to English Chancery law. *See* ECF No. [353] at 7-8. For instance, Defendants quote 22 U.S.C. § 1623(a)(2), which states, in relevant part, "[i]n the decision of claims under this subchapter, the [FCSC] shall apply the following in the following order: (A) The provisions of the applicable claims agreement as provided in this subsection. (B) The applicable principles of international law, justice, and *equity*." (emphasis added). *See* ECF No. [350] at 13. The term "equity" in the context of the provision plainly suggests that the term is used to convey "fairness" or "justice."

Lastly, the Court is not persuaded by Defendants' argument that the R&R's conclusion regarding treble damages and its reliance on *Fleitmann*, 240 U.S. 27, are incorrect. To reiterate, Defendants argue that *Fleitmann* only stands for the proposition that the right to a trial by jury for a statute involving treble damages is a statutory right that depends on the text of the particular statute in question, rather than a Seventh Amendment right. *See* ECF No. [350] at 14. However, in a subsequent case involving the Seventh Amendment right to a jury trial, the Supreme Court held that "actual and punitive damages" are "traditional form[s] of relief offered in the courts of law." *Curtis*, 415 U.S. at 196. The Supreme Court determined that punitive damages provided a legal remedy, and that the Seventh Amendment entitled either party to a jury trial. *See id.* This case is similarly a case in which the Court must determine whether there is a Seventh Amendment right to a jury trial. Therefore, in keeping Supreme Court precedent in *Curtis*, the Court concludes that the Act's provision for treble damages, which are punitive damages, provides a legal remedy and that the Seventh Amendment entitles Plaintiff to a jury trial.

Defendants' reliance on *Swofford v. B&W, Inc.*, 336 F.2d 406, 411 (5th Cir. 1964), to argue that treble damages do not establish the right to a jury trial is similarly unavailing. *See* ECF No. [350] at 14. *Swofford* did not categorically state that punitive damages foreclosed a jury trial but, rather, that punitive damages may or may not entitle litigants to a jury trial. *Id.* at 412 ("[W]e find no authority for the proposition that the parties enjoyed a constitutional right to jury trial on the award and amount of exemplary damages. Quite to the contrary, the cases indicate that Congress has fluctuated, with approval by the Supreme Court, between jury trial and no jury trial on the question of exemplary damages in patent actions."). The Fifth Circuit in *Swofford* ultimately held that treble damages in that particular case did not confer the right to a jury trial because the case involved a statute that expressly consigned the question of treble damages to the presiding judge instead of the jury. *See* 336 F.2d at 413. As Plaintiff correctly argues, *Swofford* was decided on the first inquiry that asks whether the statute at issue expressly demonstrates congressional intent to permit a trial by jury. *See* ECF No. [353] at 8. The first inquiry is not relevant in this case, and *Swofford*, therefore, is inapposite.

The Court finds that the stated goal of "deter[ring] trafficking" and treble damages ultimately weigh in favor of finding that the Act sets forth a punitive, legal remedy. *See* 22 U.S.C. § 6081(11); *Curtis,* 415 U.S. at 196. As such, the R&R correctly concludes that the claim involves a legal remedy, and Defendants' objection on this issue is without merit.

### IV.   CONCLUSION

Upon a comprehensive review, the Court finds Magistrate Judge Louis' R&R to be well reasoned and correct. The Court agrees with the analysis in the R&R and concludes that Norwegian's Motion should be denied.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. The R&R, **ECF No. [343]**, is **ADOPTED**.

2. Norwegian's Motion, **ECF No. [197]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 18, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record