# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| HAVANA DOCKS CORPORATION, | **Case No. 19-cv-21724** |
| | **BLOOM/McAliley** |
| Plaintiff, | |
| v. | |
| CARNIVAL CORPORATION, | |
| Defendant. | |
| _____/ | |
| HAVANA DOCKS CORPORATION, | **Case No. 19-cv-23588** |
| | **BLOOM/McAliley** |
| Plaintiff, | |
| v. | |
| MSC CRUISES SA, | |
| MSC CRUISES SA CO, and | |
| MSC CRUISES (USA) INC., | |
| Defendants. | |
| _____/ | |
| HAVANA DOCKS CORPORATION, | **Case No. 19-cv-23590** |
| | **BLOOM/McAliley** |
| Plaintiff, | |
| v. | |
| ROYAL CARIBBEAN CRUISES, LTD., | |
| Defendant. | |
| _____/ | |
| HAVANA DOCKS CORPORATION, | **Case No. 19-cv-23591** |
| | **BLOOM/McAliley** |
| Plaintiff, | |
| v. | |
| NORWEGIAN CRUISE LINE HOLDINGS LTD., | |
| Defendant. | |
| _____/ | |

## DEFENDANTS' SUR-REPLY TO
## <u>PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT</u>

Defendants Carnival Corporation d/b/a Carnival Cruise Line ("Carnival"), MSC Cruises S.A., MSC Cruises SA Co., and MSC Cruises (USA) Inc. (collectively, "MSC Cruises"), Royal Caribbean Cruises Ltd. ("Royal Caribbean"), and Norwegian Cruise Line Holdings Ltd. ("Norwegian") (collectively, "Defendants") submit the following Sur-Reply to Plaintiff's Reply in Support of its Motion for Entry of Judgment ("Pl.'s Reply") [ECF No. 449], to address the issue of whether the damages Plaintiff seeks violate constitutional due process.[1]

Plaintiff's core position is that any amount of damages—no matter how excessive the "disparity" between damages awarded and actual harm, or the lack of "reprehensibility" of alleged conduct—is permitted so long as it is codified in a statute.  That is breathtakingly inaccurate and, more importantly, unconstitutional.  In clinging to that notion, Plaintiff fails to meaningfully contest three arguments that independently establish that the award sought by Plaintiff is "wholly disproportioned to the offense and obviously unreasonable," *St. Louis, Iron Mountain & S. Ry. Co. v. Williams*, 251 U.S. 63, 66–67 (1919), and "grossly out of proportion to the possible actual damages" that Plaintiff may have suffered under any reasonable measure.  *Missouri Pac. R. Co. v. Tucker*, 230 U.S. 340, 351 (1913).  For those reasons, the Court should reject the damages sought by Plaintiff and authorize only an award consistent with due-process principles.

***First***, Plaintiff does not dispute that the Act systematically produces disproportionate awards because it uses a harsher-than-retributive and far-greater-than-compensatory measure of damages by measuring such damages based ***not*** on the defendant's conduct, but instead based solely on the amount of loss caused by the Cuban Government's confiscation of property.  *See*

---

[1] Defendants expressly preserve for appeal their argument that Plaintiff lacks Article III standing, but in light of the Eleventh Circuit's intervening decisions in *Garcia-Bengochea v. Carnival Corp.*, No. 20-12960, 2022 WL 17170885 (11th Cir. Nov. 23, 2022), and *del Valle v. Trivago GmbH et al.*, No. 20-12407, 2022 WL 17101160 (11th Cir. Nov. 22, 2022), Defendants will not further brief this issue here.

Defendants' Response to Plaintiff's Motion for Entry of Judgment ("Defs.' Resp."), ECF No. 448 at 19–25.  To the contrary, Plaintiff argues that the constitutional limits that the Supreme Court has placed on punitive damages do not apply to statutory damages.  That is wrong.  The Supreme Court's decisions on punitive damages are premised upon the Court's earlier decisions on statutory damages.  Courts apply those punitive damages decisions to statutory damages, and the first two *Gore* guideposts—reprehensibility and proportionality between the punitive portion of the damages and the portion that redresses the plaintiff's injury—correspond to and are derived from the inquiries into whether statutory damages are "wholly disproportioned to the offense," *Williams*, 251 U.S. at 66–67, or "grossly out of proportion to the possible actual damages." *Tucker*, 230 U.S. at 351.

      ***Second***, Plaintiff barely disputes that the Act's damages are wildly disproportionate to both the gravity of the alleged offense and the amount of Plaintiff's alleged actual harm (even under Plaintiff's theory of actual harm).  Under Plaintiff's theory, its injury was that Defendants used the Terminal without Plaintiff's authorization, thereby depriving Plaintiff of the fees it would have been paid for granting Defendants the ability to use the Terminal.  The damages Plaintiff seeks, however, are over twenty times greater than the fees actually paid for use of the Terminal.  Defs.' Resp. at 30.  Plaintiff never attempts to explain how this 20:1 ratio between punitive and actual damages is constitutionally permissible, and Plaintiff has never come forward with any evidence that theoretically it would have been paid ***more*** in fees than what Defendants ***actually*** paid to use the Terminal.  Indeed, Plaintiff cannot show that any of the traditional factors that must exist in order to support a finding of reprehensibility are present here: this case does not involve physical injury, loss of life, risks to health and safety, exploitation of a financially vulnerable plaintiff, fraudulent or malicious acts, or multiple, discrete tortious acts.  Far from satisfying these

"reprehensibility" criteria, Defendants here sailed to Cuba where doing so was encouraged by the U.S. Government and permitted under general and specific licenses.  As a result, no award in excess of actual damages could be justified.

And although Plaintiff points to unspecified deterrence needs that supposedly justify the Act's damages measure, statutory damages cannot be justified on deterrence grounds if they do not "bear any reasonable or proportioned relationship to the 'offense'" or "the statute's public importance and deterrence goals."  *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1122 (9th Cir. 2022).  Here, the Act's measure of damages is entirely untethered to the degree or extent of Defendants' conduct or need for deterrence; instead, the Act imposes damages that "greatly exceed any reasonable deterrence value."  *Id.* at 1122.  Indeed, it is impossible to justify the exorbitant damages Plaintiff seeks here given that the case involved numerous difficult questions of first impression, against Defendants who traveled while such travel was licensed, and where the Executive branch never took any action against the Defendants here (despite Plaintiff's request that the Executive do so).[2]

***Third***, Plaintiff does not even address the argument that damages here are wildly disproportionate to the property interest Plaintiff actually owned, which did ***not*** include ownership of the Terminal, and did ***not*** include the rights to operate a passenger terminal or to exclude others from docking at the Terminal.  Defs.' Resp. at 27–30.  These conclusions follow squarely from the unrebutted expert testimony of Ambar Diaz, who is the only expert in this case qualified to opine on the nature of Plaintiff's property interest.  Just as Plaintiff offered no expert to contest these

---

[2] *See* ECF No. 237-24 (email from the State Department to Plaintiff) ("As previously discussed, given the clear exclusion in Title IV's definition of 'traffics' of transactions and uses of property incident to lawful travel in Cuba, we [the U.S. Department of State] are not currently pursuing Title IV actions in relation to commercial cruise lines.").

conclusions earlier, Plaintiff does not contest them in its most recent Reply. Moreover, these conclusions are not inconsistent with anything in the Final Decision of the Foreign Claims Settlement Commission ("FCSC")—and even if there was some inconsistency, the FCSC's determination and § 6083(a)(1) cannot foreclose judicial resolution of the ***constitutional*** analysis here without violating the Supremacy Clause, Article III, and the Due Process Clause. *Id.* at 29–30.

Plaintiff's silence on this critical issue amounts to a concession that Plaintiff suffered ***no actual damages*** in this case: even absent confiscation, Plaintiff would have had no right to authorize or prevent Defendants from cruising to the Terminal, and could not have charged Defendants for doing so. *Singh v. Royal Caribbean Cruises, Ltd.*, 576 F. Supp. 3d 1166, 1192 (S.D. Fla. 2021) ("Generally, '[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned.'" (quoting *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014))). As a result, Plaintiff's request for nearly a half-billion dollars is wildly "out of proportion to the actual damages" and plainly unconstitutional. *Tucker*, 230 U.S. at 351.

For each of these reasons, considered independently let alone collectively, the Court should find that the damages Plaintiff seeks are unconstitutionally excessive.

## ARGUMENT

## I.   PLAINTIFF MISUNDERSTANDS THE DUE PROCESS INQUIRY

Plaintiff first accuses Defendants of conflating the standard for the constitutionality of punitive damages with the standard applicable to statutory damages, Pl.'s Reply at 18–20,[3] but it

---

[3] Moreover, Plaintiff and the Court have consistently taken the position that the damages Plaintiff seeks are essentially punitive in nature. *See* Plaintiff's Omnibus Response to Defendants' Motions to Strike Jury Demand, ECF No. 254, at 12–13 (citing *Tull v. United States*, 481 U.S. 412 (1987)

is Plaintiff who misunderstands the applicable cases.  As Defendants explained in their Response, the punitive damages standard derives from the Supreme Court's earlier statutory damages caselaw, both standards are grounded in the same constitutional right against grossly excessive damages, and both standards pose the same question: whether the punitive component of an award is "grossly disproportional to the gravity of . . . defendant[s'] offense," *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 434 (2001) (punitive damages), or "the penalty prescribed" by a statute "is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable," *Williams*, 251 U.S. at 66–67 (statutory damages).  Defs.' Resp. at 16–17 & n.21.  At root, these inquiries are the same.  "As with punitive damages awarded by juries," a court examining statutory damages "must consider the magnitude of the aggregated award in relation to the statute's goals of compensation, deterrence, and punishment," as well as the severity of "the proscribed conduct."  *Wakefield*, 51 F.4th at 1123.  Thus, cases in both the punitive damages and statutory damages contexts are instructive on the underlying Due Process question here.

Plaintiff misleadingly states that courts decline "to apply the punitive damages standard to excessiveness review of statutory damages awards."  Pl.'s Reply at 19.  While the Eleventh Circuit has not yet addressed the proper standard for assessing a constitutional challenge to statutory damages, a large body of caselaw from other circuits recognizes that the punitive damages caselaw *is* relevant to the statutory damages inquiry because both involve consideration of: (1) the proportionality of the damages to the severity of the offense, and (2) an assessment of the ratio

---

and *Curtis v. Loether*, 415 U.S. 189 (1974)); *see also* Order Adopting R&R and Denying Motion to Strike Plaintiff's Jury Demand, ECF No. 357 at 14 ("The Court finds that the stated goal of 'deter[ring] trafficking' and treble damages ultimately weigh in favor of finding that the Act sets forth a punitive, legal remedy.") (citing *Curtis*, 415 U.S. at 196).

between the portion of an award that compensates a plaintiff and the portion that is punitive.  These same considerations are also relevant under the landmark punitive damages decision of *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), which directs courts to consider the "reprehensibility of the defendant's misconduct" and "the disparity between the harm or potential harm suffered" by the plaintiff and the "punitive damages award."  *Id.* at 575–76.  And courts have recognized that punitive damages precedents provide guidance on the application of these principles.

For example, the Ninth Circuit has held that the punitive damages caselaw establishes "by analogy" that "where statutory damages no longer serve purely compensatory or deterrence goals," courts must consider "an award's reasonableness and proportionality to the violation and injury." *Wakefield*, 51 F.4th at 1122–23 (citing *Gore*, 517 U.S. at 580–81, for the proposition that the "ratio" between the punitive component of an award and the "actual harm inflicted on the plaintiff" must be considered in assessing the proportionality of the damages to the injury).  Similarly, the Seventh Circuit has concluded that in assessing whether statutory damages are "within a constitutionally allowable range," courts should "start from the harm" and then "add an appropriate multiplier" if one is necessary "to reflect the fact that many violations are not caught and penalized."  *United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020) (citing *State Farm*, 538 U.S. at 408).[4]  And the Second Circuit has determined that when statutory damages go "so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages," due process may require courts to "reduce the aggregate damage award" under the principles of *State Farm* and *Gore*.  *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d

---

[4] Needless to say, Plaintiff has no evidence that any such multiplier would be appropriate here. The events at issue in this case occurred in response to a change in Executive policy authorizing, ***and indeed encouraging***, Defendants to cruise to Cuba for a limited period of time.

Cir. 2003). *See also Montera*, --- F.3d ----, 2022 WL 3348573, at *5 to *6 (relying on *Gore* "methodology" to reduce statutory damages based on reprehensibility and ratio analysis)[5]; *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 466 (D. Md. 2012); *DirecTV, Inc. v. Gonzalez*, 2004 WL 1875046, at *4 (W.D. Tex. Aug. 23, 2004).

While Plaintiff cites cases from the First, Eighth, and Sixth Circuits purportedly holding that the punitive damages caselaw is irrelevant in statutory cases, none of those cases actually reaches such a broad holding.  None of those cases ever questions the relevance of the reprehensibility of the defendant's conduct to the assessment of whether damages are proportional. *See Sony BMG Music Entmt. v. Tenenbaum*, 719 F.3d 67, 70–71 (1st Cir. 2013) (addressing only "*Gore*'s second and third guideposts") (*Tenenbaum II*); *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907–08 (8th Cir. 2012) (same); *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 587–88 (6th Cir. 2007) (failing to explain how any of the *Gore* guideposts—including reprehensibility—are not already incorporated into the statutory damages inquiry).  Nor does Plaintiff ever attempt to argue that reprehensibility is irrelevant.  *See* Pl.'s Reply at 18–20 (addressing only second and third guideposts).

Moreover, if those other circuits really are disregarding the disparity between actual harm and statutory damages, then they are violating binding Supreme Court precedent explicitly holding that penalties "grossly out of proportion to the possible actual damages" violate due process, *Tucker*, 230 U.S. at 351; *see also Seaboard Air Line Ry. v. Seegers*, 207 U.S. 73, 78 (1907)

---

[5] It does not matter that *Parker* and *Montera* involved aggregated, class-action damages. The application of these principles to "aggregate" or "class action" cases is an ***extension*** of the rule, allowing a defendant to prove that an aggregate penalty is unconstitutional "even where the prescribed per-violation award is constitutionally sound." *Wakefield*, 51 F.4th at 1121.  Here, the prescribed award of over one hundred million dollars per violation is not constitutional even standing alone.

(considering size of penalty in relation to actual injury).  Indeed, Plaintiff's cases fail to consider *Tucker* at all.  *See Tenenbaum II*, 719 F.3d at 70–71; *Thomas-Rasset*, 692 F.3d at 907–08.

Nor do the cases Plaintiff cites ever address the fact that the reprehensibility and disparity principles from the punitive damages caselaw are simply restatements of principles that were already present in the Court's statutory damages jurisprudence.  Indeed, the basis for the "reprehensibility" test in *Gore* was the **statutory** damages principle from *Williams* that statutory damages must not be "'wholly disproportioned to the offense.'"  *Gore*, 517 U.S. at 575 (quoting *Williams*, 251 U.S. at 66–67).  The "disparity" principle from *Gore* is also grounded in the statutory damages caselaw's principle that damages that are "grossly out of proportion to the possible actual damages" are inconsistent with due process.  *Tucker*, 230 U.S. at 351;[6] *see also Seegers*, 207 U.S. at 78.  Indeed, apart from *Williams*, the only due process precedents *Gore* cited as sources for **either** the reprehensibility or disparity principles were *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443 (1993), and *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991), which, in turn, relied on *Williams*, *Tucker*, *Seegers*, *Sw. Tel. & Tel. Co. v. Danaher*, 238 U.S. 482 (1915), and other statutory damages cases.  *See Gore*, 517 U.S. at 575, 580; *TXO Prod. Corp.*, 509 U.S. at 453–55; *Haslip*, 499 U.S. at 12.[7]  The other circuits to consider the question are correct that—just

---

[6] *Williams* indicates that when statutory damages are "imposed as a punishment for the violation of a public law" rather than a private right, "the Legislature may adjust its amount to the public wrong rather than the private injury." That alternative analysis does not apply here because—as this Court has concluded—a claim under the Act is not based on the violation of public rights. ECF No. 357 at 6–8. Even if liability under the Act were based on a public wrong, the damages would still be grossly disproportionate, because the Act's measure of damages does not even attempt to impose damages in a manner that reflects the need for deterrence, but is instead based on a harsher-than-retributive metric. *See Wakefield*, 51 F.4th at 1124 (A "largely punitive" award violates due process if it "is gravely disproportionate to and unreasonably related to the legal violation committed").

[7] Plaintiff attempts to distinguish *Tucker* and *Danaher* because they were decided before *Williams*, the defendants in *Danaher* engaged in no intentional wrongdoing, and the actual damages in

like the punitive damages caselaw—the statutory damages standard considers whether "the measure of punishment" is reasonable and proportionate in relation to **both** "the violation and injury." *Wakefield*, 51 F.4th at 1122–23; *see also Dish Network*, 954 F.3d at 980; *Parker*, 331 F.3d at 22.

Plaintiff commits the same error as the cases it depends upon: relying on *Thomas-Rasset*, Plaintiff asserts that an inquiry into disparity "invites speculation about the amount of a plaintiff's actual harm, which is exactly what statutory damages are imposed to avoid." Pl.'s Reply at 19. But Supreme Court precedent mandates the comparison between actual harm and purely punitive statutory damages, and it holds that when there is "difficulty in proving or ascertaining the actual damages," due process tolerates a statutorily "liquidated amount *reasonably approximating* the probable damages." *Tucker*, 230 U.S. at 348 (emphasis added). Thus, even if there were some difficulty in estimating Plaintiff's actual damages, that would mean only that there is room for an award *reasonably approximating* **actual** damages, not that *any* amount of damages—no matter how disproportionate—automatically satisfies due process.

Even under Plaintiff's own theory of harm, however, Plaintiff's actual damages are not especially difficult to ascertain: Plaintiff argues throughout its briefing that its actual damages are equal to the amount it purportedly lost out on "from Defendants' failure to seek and pay for authorization." Pl.'s Reply at 19. These damages are hardly "difficult to calculate," *id.*, since Plaintiff specifically sought and obtained in discovery the amounts that Defendants **actually paid** for authorization to use the Terminal for their cruises. The amounts Defendants paid to the current

---

*Tucker* were ascertainable. Pl.'s Reply at 12–13. But *Williams* did not overrule either of these decisions, and both stand for the proposition for which Defendants cite them: that the Supreme Court's statutory damages caselaw already considered reprehensibility and the plaintiff's actual damages long before these guideposts were extended to the context of punitive damages.

property holder for "authorization to use the Terminal" is an obvious proxy for the actual damages Plaintiff itself identifies, Pl.'s Reply at 13, and courts routinely rely on that figure in calculating damages based on unauthorized use of property and unjust enrichment.  *See* Defs.' Resp. at 21–21; D. Dobbs, *Law of Remedies* § 5.8(2) (remedy for temporary unauthorized use of real property is the "fair rental value" for the time possessed); Restatement (Third) of Restitution and Unjust Enrichment § 49(3) (2011) (price a defendant has paid for a benefit is a measure of the benefit's value).  Moreover, as discussed below, Plaintiff never disputes (let alone refutes) Defendants' arguments that Plaintiff's actual damages are equal to $0 because it never owned the Terminal or had a right to exclude others from passenger use of the Terminal.  *Infra*, at 21-25.

Plaintiff also asserts that the disparity guidepost should not apply because "[s]tatutory damages" may "vindicate numerous policy objectives" through "a single sum that is often impossible to segregate by purpose."  Pl.'s Reply at 20; *see also Tenenbaum II*, 719 F.3d at 71.  But even if that principle might apply in some difficult cases, it does not apply here.  Like jury awards, statutory penalties generally "combine deterrence, compensatory, and punitive goals," *Wakefield*, 51 F.4th at 1122, and it is possible to distinguish what components of a statutory award can be thought of as serving each of these purposes.  To arrive at the compensatory portion of a statutory amount, one need only isolate the economic value of the actual injury the plaintiff has identified and proven, as Defendants' analysis demonstrates here.  *See* Defs.' Resp. at 21–25, 27–30.  From there, a court need only consider how much of the remaining sum is justifiable based on deterrence or retributive considerations—just as a court must do in a punitive damages case in assessing whether punitive damages are justified by the "goals of deterrence and retribution." *State Farm*, 538 U.S. at 425; *see also Wakefield*, 51 F.4th at 1122–23; *Dish Network*, 954 F.3d at 980.

Plaintiff further argues that the punitive damages caselaw is irrelevant because it is grounded in "fair notice" considerations that are absent when a statute provides the measure of damages. Pl.'s Reply at 19. Not so. Fair notice is just one of the Due Process Clause's requirements, but because the Clause imposes both "procedural and substantive constitutional limitations" on damages, *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003), notice is not sufficient in and of itself.

The Supreme Court has made clear that the prohibition on "'grossly excessive' punishments" is one of the "substantive limits" imposed by the Due Process Clause, *Cooper Indus.*, 532 U.S. at 433 (quoting *Gore*, 517 U.S. at 562), in addition to the procedural right to "adequate notice of the magnitude of the sanction," *Gore*, 517 U.S. at 574, and safeguards against "'arbitrary punishments'" based on "a 'decisionmaker's caprice.'" *Phillip Morris USA v. Williams*, 549 U.S. 346, 352 (2007) (quoting *State Farm*, 538 U.S. at 416). *See also Phillip Morris*, 549 U.S. at 353 ("Because we shall not decide whether the award at issue here is 'grossly excessive,' we need now only consider the Constitution's procedural limitations."); *Honda Motor Co. v. Oberg*, 512 U.S. 415, 420 (1994) ("[T]he Constitution imposes a substantive limit on the size of punitive damages awards."). Just like any other substantive constitutional right, the right against grossly disproportionate damages applies with equal force to statutes. *See, e.g.*, *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994).

Thus, whether considering statutory or punitive damages, courts must determine whether the damages are grossly excessive—and the punitive damages cases like *Gore* instruct that this inquiry considers the dual guideposts of the "reprehensibility" of the conduct and the "disparity" between damages awarded and actual harm. The reprehensibility guidepost is both "the most important indicium of the reasonableness of a punitive damages award," *Gore*, 517 U.S. at 575,

and a threshold requirement that enforces the principle that "punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm*, 538 U.S. at 419.  This is a substantive requirement under which damages in excess of actual damages are disproportionate to the offense unless the offense involved particularly reprehensible conduct.  If it is grossly excessive for a jury to award punitive damages (whether at all or at a particular level) for anything but sufficiently reprehensible conduct, it is also grossly excessive for Congress to impose punitive statutory damages on insufficiently reprehensible conduct.

Similarly, the disparity guidepost exists to ensure that "the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm*, 538 U.S. at 426.  That is a substantive requirement of proportionality, not a notice requirement.  It applies equally "whether the penalties take the form of legislatively authorized fines or judicially imposed punitive damages." *Gore*, 517 U.S. at 572; *see also Tucker*, 230 U.S. at 351; *Seegers*, 207 U.S. at 78; *Wakefield*, 51 F.4th at 1122–23 (courts must consider proportionality to both "the violation and injury").

Ultimately, Plaintiff never identifies any alternative method of determining whether and how to reduce grossly disproportionate statutory damages.  Under Plaintiff's theory, any amount of damages—no matter how excessive in relation to actual harm or reprehensibility of conduct— is permitted so long as it is codified in a statute.  This is plainly inconsistent with the Due Process Clause and Supreme Court precedent.  Perhaps this is why, even in circuits that  arguably disclaim such analysis (erroneously), courts nonetheless end up applying an analysis of reprehensibility and disparity.  In the Eighth Circuit, for example, the leading precedent invalidating statutory damages

on due process grounds considered the "amount" of the damages in relation to both the severity of defendant's "conduct" and the "harm to the recipients," despite *Thomas-Rasset*'s holding, presumably because there is no other way of assessing whether statutory damages are disproportionate. *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962–63 (8th Cir. 2019).

Binding precedent requires this Court to apply the Due Process Clause's substantive protection against excessive damages, informed by cases addressing both statutory and punitive damages. As discussed below, the damages in this case are plainly excessive under this analysis.

## II. PLAINTIFF HAS NO MEANINGFUL ARGUMENT THAT THE ACT'S MEASURE OF DAMAGES IS PROPORTIONAL AS APPLIED TO "TRAFFICKING" ACTIVITY INVOLVING USE, COMMERCIAL ACTIVITY, OR SIMILAR CONDUCT

On the merits of Defendants' due process challenge, Plaintiff presents no meaningful argument that the Act's damages formula is constitutional as applied to acts of trafficking that involve the mere, temporary "use" of confiscated property, which is what Plaintiff has consistently claimed that Defendants did here. *See* Defs.' Resp. at 19–25. As Defendants argued in their Response, the Act's measure of damages does not even attempt to track the gravity of the wrong committed by the defendant or the harm actually suffered by the plaintiff. Instead, the Act imposes a harsher-than-retributive penalty in an amount that is measured based on the wrong done and harm inflicted by the ***original acts of confiscation*** perpetrated by the Cuban Government.

Plaintiff never disputes that this measure does not "bear any reasonable or proportioned relationship to the 'offense'" allegedly committed, *Wakefield*, 51 F.4th at 1122, because it measures punishment by the loss caused by the confiscation itself, rather than the Defendant's offense, thereby violating the elementary principle that the "punishment must be tailored to [the defendant's] personal responsibility." *Enmund v. Florida*, 458 U.S. 782, 801 (1982); *Tison v. Arizona*, 481 U.S. 137, 149 (1987) (holding that a punishment not "directly related to the personal

13

culpability of the . . . offender" constitutes "excessive retribution."). Nor does Plaintiff ever attempt to explain why the Due Process Clause would tolerate a mechanism for doling out damages that allows the plaintiff to recover the same damages against every subsequent "trafficker" regardless of whether the plaintiff already has been or will be fully compensated for the value of the confiscated property on another claim against a different defendant.[8]

Critically, the Act's measure of damages cannot be rationalized as necessary to secure deterrence or adequate compliance with federal policy regarding Cuba, as shown by the fact that the "trafficking" at issue occurred only with the encouragement of the United States Government, which issued licenses for cruise travel. Defs.' Resp. at 24–25. Plaintiff asserts (without argument) that the damages authorized by the Act are justified by two overarching goals: to (1) "deter trafficking" and (2) to "provide U.S. nationals with a compensatory remedy." Pl.'s Reply at 14. But the fact that a statute has goals does not mean that its measure of damages is automatically reasonable or proportionate. For statutory damages to be justified on the basis of deterrence, the damages must have a reasonable "relationship" with "deterrence goals," and cannot "greatly exceed any reasonable deterrence value." *Wakefield*, 51 F.4th at 1122; *see also Gore*, 517 U.S. at 584 ("[A] sanction . . . cannot be justified on the ground that it was necessary to deter future misconduct without considering whether less drastic remedies could be expected to achieve that

---

[8] Making Plaintiff's argument about the extent of statutory damages to which it is entitled under the Act even more egregious, Plaintiff never attempts to explain how the Due Process Clause would tolerate an award of damages that allows a plaintiff to recover the value of property interests in which a defendant has ***never even trafficked***, and indeed, in which that plaintiff never even ***alleged*** that the defendant did. Nor can it. Ordering Defendants to pay a damages award that includes the value of securities, accounts receivable, and debt of the Cuban Government that were confiscated by the Cuban Government – property in which Defendants never trafficked – punishes Defendants for the confiscation itself rather than the wrong allegedly committed. *See* Defs.' Resp. at 2-7 (discussing this issue and arguing that any judgment should not include the Certified Claim's line-item values for the property interests in which Defendants were not alleged and have not been found to have trafficked).

goal."); *Haslip*, 499 U.S. at 22 (analyzing state court's standard for "determining whether a particular award is greater than reasonably necessary to punish and deter").

The Act's damages formula has no rational (let alone reasonable) relationship with deterrence whatsoever.  The formula does not attempt to track the level of damages necessary to deter "trafficking," but instead imposes on all traffickers (no matter how serious their specific acts of trafficking) the same liability that would be imposed on the Cuban Government itself for its original act of confiscation.  *See Montera*, 2022 WL 3348573, at *5 (rejecting statutory damages as unconstitutionally excessive where statute "creat[ed] immense punitive consequences, rather than simply seeking to incentivize individual lawsuits or create deterrence").

Damages that "exceed[] both what was necessary to compensate any potential injury from the violations" and what was "necessary to enforce the Act or deter future violations" are not justified based on deterrence, and at that point, "consideration of an award's reasonableness and proportionality to the violation takes on heightened constitutional importance."  *Wakefield*, 51 F.4th at 1122-23 (internal quotation marks and citation omitted); *see also Dish Network* 954 F.3d at 980 (explaining that to find the level of punishment sufficient to deter, courts should "start from the harm" and then "add an appropriate multiplier" if one is necessary "to reflect the fact that many violations are not caught and penalized.").  To be clear, Plaintiff is asking for over ***$100 million*** dollars—***from each Defendant***—for limited interaction with a port property over the course of roughly just three years resulting in only a fraction of those damages in net revenue.  Despite this exorbitant ask, which has no precedent in our courts, Plaintiff has offered no evidence or argument why the wildly over-compensatory damages in this case are necessary for deterrence here.

Because these damages "greatly exceed any reasonable deterrence value," they cannot be justified on this basis.[9]  *Wakefield*, 51 F.4th at 1122.

Moreover, these exorbitant damages are especially inappropriate here, where cruise travel was permitted under general and specific licenses.  This case involved numerous difficult questions of first impression about the lawfulness of such travel, culminating in a 168-page summary judgment opinion from this Court on issues including: (1) whether Defendants were permitted to travel to Havana, even if doing so required use of confiscated property, or whether use of confiscated property is "necessary" only if there is no other way to reach any port in the country of Cuba; (2) whether Plaintiff's claim to a 99-year concession that was issued in 1905 entitled it to contest cruise travel occurring after 2004; and (3) whether the Defendants' travel involved "tourist activities" prohibited by statute, even though the Executive branch never brought any action against Defendants despite their well-advertised cruise activities.  Indeed, the Executive Branch determined that Defendants' conduct ***did*** satisfy the "lawful travel" exception of the Helms Burton Act.  *See* ECF No. 237-24.  While this Court reached a different conclusion based on its own review of the statutory text, the fact that different branches of Government reached different conclusions on these hard questions of first impression weighs heavily against a finding that

---

[9] Supreme Court caselaw observes that damages aimed at "optimal deterrence" will "equal the harm multiplied by . . . the ratio of the injurer's chance of escaping liability to his chance of being found liable."  *Cooper Indus.*, 532 U.S. at 438-439 (quoting A. Polinsky & S. Shavell, *Punitive Damages: An Economic Analysis*, 111 Harv. L. Rev. 869, 890-91 (1998)); *see also Ciraolo v. City of New York*, 216 F.3d 236, 244 (2d Cir. 2000).  While statutes need not always aim for optimal deterrence, *see Cooper Indus.*, 532 U.S. at 439, damages cannot "greatly exceed any reasonable deterrence value," *Wakefield*, 51 F.4th at 1122, and something reasonably approximating optimal deterrence is the most obvious way of understanding reasonable deterrent value. *See Ciraolo*, 216 F.3d at 244-45; *Dish Network* 954 F.3d at 980.  The Act's measure of damages obviously does not come close to approximating optimal deterrence.  The measure is not based on the harm caused by the defendant, but rather the harm caused by the Cuban Government, and its multiplier is not based on the need to make up for cases of "trafficking" that go undetected. Indeed, Plaintiff puts forth no evidence that use of the Terminal is anything other than easily detectable.

Defendants' conduct was sufficiently "reprehensible" or in need of "deterrence" to justify the extreme damages proposed here. *Cf. Danaher*, 238 U.S. at 490 (finding penalty unconstitutional where liability turned on issues of first impression not previously resolved by state supreme court).

Plaintiff attempts to confuse the issue by accusing Defendants of mounting a "facial" challenge to the Act's damages measure. Pl.'s Reply at 16–18. But this makes no sense. As Plaintiff's own caselaw indicates, a "facial" challenge, by definition, attempts to establish that a law "is unconstitutional in ***all*** of its applications," *Wa. State Grange v. Wa. State Rep. Party*, 552 U.S. 442, 449–50 (2008) (emphasis added), which is not what Defendants argue here. Defendants simply do not argue that the Act's measure of damages would be unconstitutional when applied to ***all*** possible uses of confiscated property. Moreover, whether a challenge is "facial" only matters when the challenger seeks a ***remedy*** that would "vindicate not only her own rights but also those of others who may be adversely impacted by the statute," rather than a remedy that would only benefit "a particular party" (*i.e.*, the challenger itself). *McGuire v. Marshall*, 50 F.4th 986, 1003 (11th Cir. 2022) (quotation marks and citation omitted). Thus, where, as here, a defendant seeks only to raise the application of a constitutional principle in a particular case, it does not matter whether that challenge is labeled as "facial" or "as-applied."

As the Supreme Court has explained, "classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127-28 (2019) (quoting *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010)). *See also Citizens United*, 558 U.S. at 331 ("[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings

17

and disposition in every case involving a constitutional challenge," and instead only "goes to the breadth of the remedy employed by the Court."); *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (holding that "[t]he label is not what matters," and that a challenge is only facial to the extent that "the relief that would follow" from it would "reach beyond the particular circumstances" of the parties raising it).

Defendants have never contended that the Act's measure of damages is unconstitutional in all of its applications. Nor have Defendants ever sought any remedy on behalf of parties not before this Court. Instead, Defendants asserted a defense that applying the Act's damages formula in this case would violate Defendants' due process rights because that measure of damages is "unconstitutional as applied to acts of 'trafficking' that occur when someone 'uses' confiscated property, 'engages in commercial activity using or otherwise benefitting from confiscated property,' or 'causes, directs, participates in, or otherwise profits from trafficking,'" without expropriating the full value of the trafficked property. Defs.' Resp. at 19 (quoting 22 U.S.C. § 6023(13)(A)(i–iii)).

That is nothing more than an as-applied challenge that reaches a broader range of potential Helms-Burton claims through the breadth of its reasoning. There is nothing special about arguments of this kind: courts adopt such arguments in every case in which they invalidate an action based on a legal principle that will foreseeably govern cases not then before the court. *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016) ("[O]nce a case is brought, no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases" (quoting R. Fallon, *As–Applied and Facial Challenges and Third–*

*Party Standing*, 113 Harv. L. Rev. 1321, 1339 (2000)), *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).[10]

For the same reason, Plaintiff is entirely off base when it asserts that Defendants seek an "advisory opinion" because Plaintiff alleged acts of "trafficking" that involved commercial activity with the Cuban Government, earning revenues or profits from use of the Terminal, or payments to Cuban entities. Pl.'s Reply at 16–17. All of these activities fall within the scope of Defendants' as-applied challenge as Defendants structured it. For ***all*** of these forms of alleged "trafficking"— none of which involve Defendants confiscating or taking ownership of the property—the Act's measure of damages dictates a harsher-than-retributive form of punishment that has no rational relationship with deterrence or the plaintiff's actual injuries.

Apart from these mischaracterizations, Plaintiff offers a hypothetical in which a certified claimholder holds a low-value claim to land that was not worth much at the time of confiscation, but on which valuable mineral deposits are subsequently discovered and then exploited by a trafficker. Pl.'s Reply at 18. Plaintiff wrongly argues that in this hypothetical, the Act would not provide excessive damages—but if anything, this thought experiment proves the opposite. Under

---

[10] Even if Defendants had sought a remedy that would apply in all cases in which the challenged trafficking takes the form of "use," "commercial activity," or similar conduct, under Eleventh Circuit precedent that would qualify as a "'quasi-facial' challenge," in which "the plaintiff contends that the law cannot be constitutionally applied to a defined subset of people the law covers, which includes herself." *McGuire*, 50 F.4th at 1003 (11th Cir. 2022). "To prevail in a quasi-facial challenge, he must satisfy the standard for a facial challenge to the extent that his claim 'reach[es] beyond [her] particular circumstances.'" *Id.* at 1004.

Defendants have argued that the Act's damages formula is unconstitutional in every case that falls within the "use," "commercial activity," or similar category. And even if there were some case in this category in which the Act's damages would not be unconstitutional, and even if Defendants *were* raising a quasi-facial challenge, that would mean only that absent parties would not be entitled to any remedy that reached the cases in which the Act's formula is proportional. *See Am. Fed. of State, Cty. and Mun. Emp's Council 79 v. Scott*, 717 F.3d 851, 863-64 (11th Cir. 2013).

Title III, plaintiffs are entitled to the ***greater of*** "the amount, if any, certified to the claimant" or "the fair market value of the property" ***today***.  22 U.S.C. § 6082(a)(1)(A)(i)(I & III).  Thus, in Plaintiff's example, the damages would still be excessive, because they would be equal to the ***present value of the entire property after it was opened for mining***—even against someone who extracted only one bucket's worth of minerals from the property.

Finally, Plaintiff asserts "Congress's plenary authority over foreign affairs" establishes that the damages contemplated by the Act are proportional.  Pl.'s Reply at 18.  But the Executive possesses "plenary authority over foreign relations," not Congress, and the Executive's authority in that arena is only circumscribed by Congress's enumerated powers. *Jean v. Nelson*, 711 F.2d 1455, 1465 (1983).  As Defendants explained (and as Plaintiff failed to dispute), the Act ***impairs*** the President's ability to control foreign affairs by allowing for wildly disproportionate damages in civil suits brought by private plaintiffs with no Executive oversight and no room for the Executive's prosecutorial discretion.  Defs.' Resp. at 24–25.  In any case, even a "plenary" power, "like every other governmental power, must be exercised in subordination to the applicable provisions of the Constitution." *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936).  That Congress has power over commerce with foreign nations cannot make a plainly disproportionate measure of damages constitutional.  Vague invocations of the importance of the political branches in foreign affairs are not enough.

Ultimately, Plaintiff barely disputes that the Act's measure of damages is not designed to rationally approximate a plaintiff's actual injury or apply sanctions in a manner calculated to achieve deterrence.  The obvious purpose of the Act's measure of damages is punitive—and is punitive in an excessively retributive manner.  Punishing a defendant with overwhelming damages for acts they did not even commit is inconsistent with basic due process principles because it "is

gravely disproportionate to and unreasonably related to the legal violation committed." *Wakefield*, 51 F.4th at 1124.[11]

### III.   PLAINTIFF HAS NO MEANINGFUL ANSWER TO DEFENDANTS' CHALLENGE TO THE DAMAGES ON THE FACTS OF THIS CASE

Plaintiff does not meaningfully dispute Defendants' arguments that the damages sought are unconstitutionally excessive as applied to the facts of this case, either.  Defs.' Resp. at 25–35. Perhaps most damningly, Plaintiff never addresses the argument that the unrebutted report of Defendants' Cuban Law Expert, Ambar Diaz, ECF No. 235-1, establishes that Plaintiff suffered no real injury because it did not have a right to control the Terminal.  *Id.* at 27–28.  Nor does Plaintiff ever dispute that this Court has the power to look through the certified claim to the Plaintiff's prior property interest in determining what damages are constitutionally permissible. *Id.* at 28–30.  It follows that Plaintiff's actual damages are equal to *$0*.  The nearly half-billion dollars sought by Plaintiff are thus "not only grossly out of proportion to the possible actual damages," *Tucker*, 230 U.S. at 351, but also "wholly disproportionate to the offense" allegedly committed by Defendants, which would not have injured Plaintiff even if the original act of confiscation had never occurred.  *Williams*, 251 U.S. at 67.

Plaintiff also never addresses Defendants' independent argument that, because none of the factors indicative of reprehensible conduct exist here, any award in excess of actual damages would violate due process.  Defs.' Resp. at 31–34.  There are five factors relevant to determining

---

[11] Plaintiff also notes that the Sixth Circuit has said that the statutory-damages standard is more deferential than abuse-of-discretion review.  *See* Pl.'s Reply at 12 (citing *Zomba*, 491 F.3d at 587. As explained above, this is wrong—but even accepting such a position, it would be an abuse of discretion for a court to authorize damages equal to the trebled total value of a property in an unauthorized use-of-property case.  Such damages would dramatically outstrip any remedy ever allowed for such conduct.  *See* Defs.' Resp. at 21–25.

whether conduct is sufficiently reprehensible[12] to permit damages in excess of compensation for the plaintiff: "(1) whether the harm caused was physical, rather than economic; (2) whether the defendant's conduct 'evinced an indifference to or a reckless disregard of the health or safety of others;' (3) whether the target of the conduct was financially vulnerable; (4) whether 'the conduct involved repeated actions or was an isolated incident;' and (5) whether the harm resulted from 'intentional malice, trickery, or deceit, or mere accident.'" *Williams v. FirstAdvantage LNS Screening Sols., Inc.*, 947 F.3d 735, 749 (11th Cir. 2020) (quoting *State Farm*, 538 U.S. at 749). As Defendants argued in their Response, ***none*** of these factors supports an award in excess of compensation because: Plaintiff is a shell company, existing only on paper, that suffered, at most, an economic injury; health and safety have nothing to do with this case; Plaintiff is not financially vulnerable; the actions at issue formed a single course of conduct; and Defendants did not engage in malicious or deceitful conduct. Defs.' Resp. at 31–33.

Plaintiff's sole response on this point is that Defendants were aware of (or should have been aware of) the Act and the Certified Claim. Pl.'s Reply at 20–29. But this is irrelevant: binding caselaw from the Eleventh Circuit holds that malice requires an "intent to harm Plaintiff," not merely a finding that the defendant "acted willfully" or "a showing of recklessness." *FirstAdvantage*, 947 F.3d at 1066; *see also* Defs.' Resp. at 32–33; *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1066 (10th Cir. 2016); *Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 365 (6th Cir. 2005); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1336 (11th Cir. 1999).

---

[12] Although Plaintiff disputes generally whether the Supreme Court's punitive damages caselaw applies to statutory damages, as discussed above, Plaintiff notably never argues that the reprehensibility guidepost is inapplicable to statutory damages (while making a point of contesting the other two guideposts). *Supra*, at 4–13; *see also* Pl.'s Reply at 18–20. This is unsurprising, given that the reprehensibility guidepost is nothing more than an application of *Williams*'s core requirement that the penalty not be "'wholly disproportioned to the offense.'" *Gore*, 517 U.S. at 575 (quoting *Williams*, 251 U.S. at 66–67).

Indeed, beyond being irrelevant, a significant amount of the evidence to which Plaintiff cites on this point concerns protected First Amendment activities—which cannot be used as a basis for constitutionally augmenting damages. *See Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 430 (1963) ("[T]he First Amendment also protects vigorous advocacy, certainly of lawful ends, against governmental intrusion.") *United States v. Harriss*, 347 U.S. 612, 625–26 (1954) (lobbying governmental officials constitutes protected speech activity).

If mere knowledge sufficed—even when there is no risk of injury to health or safety—virtually any conduct would count as reprehensible. Here, for example, Plaintiff says that in addition to "mooring ships at a pier," Defendants also carried "hundreds of passengers to Cuba," used the Terminal "as a staging ground for their tourist excursions," entered into contracts "for ground transportation" and "tourist excursions," and "realized substantial revenue streams." *Id.* That is hardly the stuff of which reprehensible conduct is made—and bears no comparison to cases in which damages in the stratospheric range sought by Plaintiff are recoverable, which frequently involve violent crimes, endangerment of public safety, or predation on vulnerable groups of people. *See* Defs.' Resp. at 25–27 (discussing $650,600,000 judgments against purveyors of opioids that caused a national public-health crisis and thousands of fatalities, and $24,250,000 judgment for extrajudicial torture and killing committed in Argentina's 1972 Trelew Massacre).

The absence of any relevant evidence of reprehensible conduct here independently establishes that there is no way for Plaintiff to justify damages in excess of compensation. As Defendants explained in their Response, when none or virtually none of the hallmarks of conduct deserving of punishment are present, damages in excess of actual damages are grossly excessive because the "statutory damages no longer serve purely compensatory or deterrence goals" and the damages are "gravely disproportionate to and unreasonably related to the legal violation committed." *Wakefield*, 51 F.4th at 1122–23; *See also* Defs.' Resp. at 33–34; *State Farm*, 538

U.S. at 419; *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 1001 (6th Cir. 2007) (reducing punitive damages to zero when malice was the only factor supporting reprehensibility); *Epic Sys. Corp. v. Tata Consultancy Servs., Ltd.*, 980 F.3d 1117, 1141–42, 1144–45 (7th Cir. 2020) (reducing to a 1:1 ratio where three reprehensibility factors were established but there was no danger to health or safety); *Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 442–43 (6th Cir. 2009) (ordering award reduced from 1.67:1 ratio to 1:1 ratio or lower when only repeated conduct factor supported reprehensibility); *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 602–03 (8th Cir. 2005) (reducing to 1:1 ratio even though defendant knowingly sold cigarettes that were abnormally hazardous to human health).

Plaintiff never offers a reason why the ***maximum*** harm it allegedly suffered would be anything other than the amount Defendants paid to access the Terminal. Defs.' Resp. at 22–24. Under that measure of Plaintiff's actual damages, the ratio of the punitive to compensatory damages here is at least 20:1. *Id.* at 30. But because "a ratio greater than 4:1 between punitive and compensatory damages" is the general maximum tolerated by the Due Process Clause, and "a lesser ratio as low as 1:1 may reach the outer limits of the due process guarantee" when "plaintiff has received a substantial compensatory damages award," this ratio is plainly impermissible, particularly given that Plaintiff never attempts to explain why retributive or deterrence considerations would justify a departure from the standard baseline. *FirstAdvantage*, 947 F.3d at 754–55.

The only concrete argument Plaintiff offers to attempt to establish that this ratio constitutes a permissible measure of damages on these facts is that denying "profits" to "traffickers" constitutes a purpose of Title III. Pl.'s Reply at 15–16. But this cannot justify an award of damages under the Act because, as Plaintiff admits, the Act's treble-damages formula applies even if Defendants lost money on their cruises. Defs.' Resp. at 23. Indeed, Plaintiff explicitly argues that it does not matter if Defendants "did not earn a profit," because "it does not offend due process to

24

award statutory damages" when a defendant did not profit from a wrong.  Pl.'s Reply at 15 n.4.

Regardless, Plaintiff does not address Defendants' argument that, under binding Supreme Court

cases, any such disgorgement of profits is a punitive remedy (because it does not seek to restore

the plaintiff to its prior position, but to strip the defendant of its gains), so any disgorgement effect

of the Act's damages formula factors into the punitive side of the ratio.  *Id.* at 23–24.  Moreover,

there is no evidence that Defendants' profits ever approached the nearly half-billion dollars sought

by Plaintiff, so any comparison based on profits would be grossly excessive as well.[13]  *See* Defs.'

Resp. at 24 & n.26.

In sum, on the facts of this case, Defendants have three independent arguments that

anything approaching the damages sought by Plaintiff would violate due process: (1) Plaintiff has

never established actual damages because it has never disputed that it had no right to exclude

Defendants from using the Terminal; (2) Plaintiff has never attempted to show that any indicator

of reprehensibility is present on the facts of this case, even though it has effectively conceded that

this guidepost is integral to the statutory-damages inquiry; and (3) the nearly 20:1 ratio between

compensatory and punitive components of the award sought by Plaintiff is clearly impermissible

in and of itself.  For these reasons, the Court should reject Plaintiff's request for wildly excessive

damages, and any award issued in this case should conform to the constitutionally permissible

ratio of actual-to-statutory damages.

## **CONCLUSION**

For the foregoing reasons, the Court should find that the damages Plaintiff seeks are

unconstitutionally excessive.

---

[13] Recognizing its inability to tie Plaintiff's requested half-billion dollar damages award to
Defendants' Havana-sailings profits, Plaintiff instead turns to Defendants' purported "substantial
revenue streams."  Pl.'s Reply at 15.  This is a red herring.  That Defendants generated revenue for
sailings to locations ***other*** than Havana as well as products and services unrelated to use of the port
property is entirely irrelevant.

Dated: December 2, 2022                                       Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**                        **HOGAN LOVELLS US LLP**
401 East Las Olas Boulevard, Suite 1200               600 Brickell Avenue, Suite 2700
Fort Lauderdale, Florida                              Miami, Florida 33131
Telephone: (954) 356-0011                             Telephone: (305) 459-6500
Facsimile:  (954) 356-0022                            Facsimile:  (305) 459-6550

By: /s/ *Stuart H. Singer*                            By: /s/ *Allen P. Pegg*
Stuart H. Singer                                      Richard C. Lorenzo
Florida Bar No. 377325                                Florida Bar No. 071412
ssinger@bsfllp.com                                    richard.lorenzo@hoganlovells.com
Meredith Schultz                                      Allen P. Pegg
Florida Bar No. 29536                                 Florida Bar No. 597821
mschultz@bsllp.com                                    allen.pegg@hoganlovells.com
Pascual A. Oliu
Florida Bar No. 0107737                               *Counsel for Norwegian Cruise Line*
Corey P. Gray                                         *Holdings Ltd.*
Florida Bar No. 0115473
cgray@bsfllp.com                                      **HOLLAND & KNIGHT LLP**
                                                      701 Brickell Avenue, Suite 3300
Pedro A. Freyre                                       Miami, Florida 33131
Florida Bar No. 192140                                Telephone: (305) 374-8500
Pedro.freyre@akerman.com                              Facsimile:  (305) 789-7799
**AKERMAN LLP**
98 S.E. 7th Street, Suite 1100                        By: /s/ *Scott D. Ponce*
Miami, Florida 33131                                  Scott D. Ponce
Telephone: (305) 374-5600                             Florida Bar No. 0169528
                                                      sponce@hklaw.com
George J. Fowler, III (admitted *pro hac vice*)
gfowler@joneswalker.com                               *Counsel for Royal Caribbean Cruises*
Luis Llamas                                                  *Ltd.*
Florida Bar No. 89822
llamas@joneswalker.com
**JONES WALKER LLP**
201 St. Charles Avenue
New Orleans, LA 70170
Telephone: (504) 582-8752

*Counsel for Carnival Corporation*
**VENABLE LLP**
600 Massachusetts Avenue
Washington, D.C. 20001
Telephone: (202) 344-4703
Facsimile:  (202) 344-8300

By:*/s/ J. Douglas Baldridge*
Florida Bar No. 708070
JBaldridge@venable.com
Andrew T. Hernacki (admitted *pro hac vice*)
ATHernacki@venable.com
Justin B. Nemeroff (admitted *pro hac vice*)
JBNemeroff@venable.com

*Counsel for MSC Cruises*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 2, 2022, the foregoing was filed with the Clerk

of Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

By:*/s/ Allen P. Pegg*
Allen P. Pegg