# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

HAVANA DOCKS CORPORATION,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**Case No. 19-cv-21724**
**BLOOM/MCALILEY**

HAVANA DOCKS CORPORATION,

    Plaintiff,

v.

MSC CRUISES SA,
MSC CRUISES SA CO, and
MSC CRUISES (USA) INC.,

    Defendants.
_____/

**Case No. 19-cv-23588**
**BLOOM/LOUIS**

HAVANA DOCKS CORPORATION,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.
_____/

**Case No. 19-cv-23590**
**BLOOM/LOUIS**

HAVANA DOCKS CORPORATION,

    Plaintiff,

v.

NORWEGIAN CRUISE LINE HOLDINGS, LTD.,

    Defendant.
_____/

**Case No. 19-cv-23591**
**BLOOM/MCALILEY**

**ORDER ON PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT**

Case No. 19-cv-23591-BLOOM/McAliley

**THIS CAUSE** is before the Court upon Plaintiff Havana Docks Corporation's ("Plaintiff" or "Havana Docks") Motion for Entry of Final Judgment, ECF No. [444] ("Motion"). Defendants filed a Response, ECF No. [448], Plaintiff filed a Reply, ECF No. [449], to which Defendants filed a Sur-Reply, ECF No. [451]. The Court has carefully considered the Motion, the Response, the Reply, the Sur-Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## I. THE MOTION

The Court assumes the parties' familiarity with the facts and procedural history in these cases. Havana Docks has elected to calculate the amount of its damages based on the amount of its certified claim plus interest, pursuant to 22 U.S.C. § 6082(a)(1)(A)(i)(I).

In the Motion, Plaintiff requests that the Court enter final judgment based on the amount of its certified claim of $9,179,700.88. In its Order on Defendants' Motion to Confirm Interest Calculation Pursuant to 22 U.S.C. § 6082(a)(1)(B), ECF No. [428] ("Interest Order"), the Court determined that the applicable rate of interest is the weekly average 1-year constant maturity Treasury yield for each week over the period between the date of confiscation and the date Plaintiff brought each of these cases against each Defendant, and that the interest is simple, not compound. *See* ECF No. [428] at 9-11. Based upon the Interest Order, Plaintiff proposes the following interest amounts for each Defendant:

| **Defendant** | **Certified Claim** | **Interest** | **Total** |
|---|---|---|---|
| Carnival | $9,179,700.88 | $27,377,359.42 | $36,557,060.30 |
| MSC Cruises | $9,179,700.88 | $27,436,548.41 | $36,616,249.29 |
| Royal Caribbean | $9,179,700.88 | $27,436,548.41 | $36,616,249.29 |
| Norwegian | $9,179,700.88 | $27,436,548.41 | $36,616,249.29 |

2

In addition, because Plaintiff has a certified claim, it is entitled to treble damages pursuant to 22 U.S.C. § 6082(a)(3)(A), (C). Accordingly, Defendants are liable for the total amounts set forth below:

| **Defendant** | **Certified Claim + Interest** | **Total Damages (after trebling)** |
|---|---|---|
| Carnival | $36,557,060.30 | $109,671,180.90 |
| MSC Cruises | $36,616,249.29 | $109,848,747.87 |
| Royal Caribbean | $36,616,249.29 | $109,848,747.87 |
| Norwegian | $36,616,249.29 | $109,848,747.87 |

Finally, pursuant to 22 U.S.C. § 6082(a)(1)(A)(ii), Plaintiff is also entitled to court costs and reasonable attorneys' fees. The parties have agreed with respect to the amounts of fees and costs to be awarded to Plaintiff up to and including September 30, 2022, *see* ECF No. [447], as follows:

| **Defendant** | **Costs** | **Attorneys' Fees** | **Total** |
|---|---|---|---|
| Carnival | $223,766.78 | $3,464,764.69 | $3,688,531.47 |
| MSC Cruises | $245,951.11 | $2,398,015.65 | $2,643,966.76 |
| Royal Caribbean | $233,974.67 | $2,062,935.80 | $2,296,910.47 |
| Norwegian | $261,002.00 | $2,817,073.61 | $3,078,075.61 |

## II. DEFENDANTS' ARGUMENTS

Defendants raise three arguments in response to Plaintiff's Motion and request for entry of judgment in the proposed amounts.[1] First, Defendants argue that the full amount of the certified

---

[1] The Court notes that Defendants do not challenge Plaintiff's mathematical calculation of the applicable interest. *See* ECF No. [448] at 16-17.

Case No. 19-cv-23591-BLOOM/McAliley

claim should not set the floor for Plaintiff's recovery because the certified claim includes items in which Defendants did not traffic. Second, Defendants argue that Plaintiff lacks Article III standing to assert its claims. Third, Defendants argue that the damages Plaintiff seek are unconstitutionally excessive under the Fifth Amendment's Due Process clause. The Court considers each argument in turn.

### A. Base Amount for Damages

Defendants argue that Plaintiff improperly seeks judgment on the entire value of the claim certified by the Foreign Claims Settlement Commission ("FCSC"), which includes items that are not related to the property in which the Court determined that Defendants trafficked. Specifically, Defendants argue that, in addition to the "Concession and tangible assets" of Plaintiff in which Defendants trafficked, the certified claim contains three additional line items including "Securities," "Accounts receivable," and "Debt of Cuban Government," in which Defendants did not traffic. Defendants argue further that the language of Title III ties the damages for trafficking in confiscated property to the value of the certified claim for "such" property. According to Defendants, Title III specifically contemplates this scenario, given that Title III provides that Courts may award damages for amounts less than the certified claim.

Plaintiff responds that pursuant to the plain language of Title III, Plaintiff is entitled to damages calculated on the full amount of the certified claim.

Upon review, the Court agrees with Plaintiff. With any question of statutory interpretation, the Court presumes that Congress "says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 254 (1992) (citing *United States v. Ron Pair Enterps., Inc.,* 489 U.S. 235, 241-42 (1989)) (further citations omitted). "The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous

meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *United States v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006) (internal quotations omitted); *see Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (where "the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotation and citation omitted). "This is so because '[t]he plain language is presumed to express congressional intent and will control a court's interpretation.'" *Moss v. GreenTree-Al, LLC*, 378 B.R. 655, 658 (S.D. Ala. 2007) (quoting *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002)) (alterations in the original). It is a court's duty "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations omitted). And, "[w]hen interpreting a statute, words must be given their 'ordinary or natural' meaning[.]" *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004) (citation omitted). Moreover, "[a] court 'should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result.'" *Moss*, 378 B.R. at 658 (quoting *Silva*, 443 F.3d at 798).

Contrary to Defendants' argument, the plain language of Title III does not tie the amount of damages to the value of the certified claim for specific types of property. Nor does Title III dictate that the Court parse through specific items in a claim certified by the FCSC to determine which types of property were involved in the trafficking activities when determining an award of damages. Rather, as Plaintiff suggests, the language that Defendants rely upon describes to whom a trafficker will be held liable, and then sets forth the amount of that liability.

First, Title III provides that a person who "traffics in property which was confiscated by the Cuban Government . . . shall be liable to any United States national who owns the claim to

such property[.]" 22 U.S.C. § 6082(a)(1)(A). Second, the following subsection of Title III states that the trafficker will be liable

> for money damages in an amount equal to the sum of—
>
> [. . .]
>
> > (I) the amount, if any, certified to the claimant by the Foreign Claims Settlement Commission under the International Claims Settlement Act of 1949 [22 U.S.C. 1621 et seq.], plus interest;
>
> [. . .] and
>
> (ii) court costs and reasonable attorneys' fees.

22 U.S.C. § 6082(a)(1)(A)(i)-(ii). In a case involving a certified claim, Title III is clear that the amount of liability is the amount certified to the claimant by the FCSC.

Moreover, the Court does not agree with Defendants that Title III permits a court to award damages in an amount less than the certified claim. Defendants point to the portion of Title III stating as follows:

> In the case of any United States national that brings an action under this section based on a claim certified under title V of the International Claims Settlement Act of 1949—
>
> [. . .]
>
> > (ii) if the recovery in the action is less than the amount of the certified claim, the United States national may receive payment under a claims agreement[.]

22 U.S.C. § 6082(f)(2)(ii). This provision, however, does not provide that a court may *award* damages in an amount less than certified claim. Rather, it provides that if the *recovery* is less than the certified claim, the claim holder may receive additional payment under a claims agreement. The *amount* of an award and the actual *recovery* of that award are distinct, and Title III does not provide that an award may be less than the amount of the certified claim. Indeed, as the Court has previously held, if there is a certified claim and liability on the part of a defendant, a plaintiff is

6

entitled to recover damages in a sum no less than the amount of the certified claim, plus interest, as set forth in section 6082(a)(1)(A)(i). Thus, the amount of the certified claim constitutes the floor for damages. *See Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2022 WL 2235569, at *5 (S.D. Fla. June 22, 2022). Moreover, the Court has previously rejected Defendants' invitation to interpret Title III as requiring trafficking in specific items of property. *See Havana Docks Corp. v. MSC Cruises SA Co.*, 455 F. Supp. 3d 1355, 1374 (S.D. Fla. 2020) ("The liability provision . . . imposes liability for trafficking in the more broadly defined 'confiscated property'—a term that . . . is not limited solely to the interest Plaintiff originally owned in the Subject Property."); *see also Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088, 1169 (S.D. Fla. 2022) ("Defendants' limiting interpretation of the LIBERTAD Act as requiring trafficking in cargo services is unpersuasive, as the Court has already explained.").

As such, Plaintiff is entitled to an award of damages that is calculated based on the full amount of its certified claim.

### B. Article III Standing

Defendants argue next that the Court should reconsider its determination regarding Plaintiff's Article III standing, arguing that Plaintiff lacks Article III standing based upon the Eleventh Circuit's decision in *Hunstein v. Preferred Collection and Management Services, Inc.*, 48 F.4th 1236 (11th Cir. 2022).[2] Plaintiff responds that *Hunstein* does not provide a basis for the Court to reconsider its ruling regarding standing because unlike these cases, *Hunstein* involved an intangible injury. By the time Defendants filed their Sur-Reply, the Eleventh Circuit issued opinions in two cases, which bear directly upon the standing arguments made by Defendants: *Del*

---

[2] The Court previously determined that Plaintiff suffered an injury-in-fact and has standing. *See Havana Docks v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1227-29 (S.D. Fla. 2020); *see also Carnival Corp.*, 592 F. Supp. 3d at 1195-96.

*Valle v. Trivago GMBH*, --- F.4th ----, 2022 WL 17101160 (11th Cir. Nov. 22, 2022), and *Garcia-Bengochea v. Carnival Corporation*, --- F.4th ----, 2022 WL 17170885 (11th Cir. Nov. 23, 2022). In their Sur-Reply, Defendants acknowledge *Del Valle* and *Garcia-Bengochea*, and do not brief the issue further. *See* ECF No. [451] at 2 n.1.

The Court briefly addresses Defendants' argument regarding the lack of Article III standing to note that the analysis in *Hunstein* does not apply to this case, as Plaintiff's claims arise under Title III of the Helms-Burton Act. Rather, the decisions in *Del Valle* and *Garcia-Bengochea* involved Title III of the Helms-Burton Act and are controlling here. The Eleventh Circuit determined in those cases that where a plaintiff alleges that it suffered a monetary injury as a result of defendants' use of properties confiscated by the Cuban government, such injury is a sufficient injury-in-fact to confer Article III standing under Title III. *See Del Valle*, 2022 WL 17101160, at *8; *Garcia-Bengochea*, 2022 WL 17170885, at *5.

C. **Unconstitutionally Excessive Damages**

Finally, Defendants argue that the damages sought by Plaintiff are unconstitutionally excessive for two reasons: (1) by allowing Plaintiff the full amount of recovery requested—over $400 million—Title III's measure of damages effectively holds any person who uses confiscated property liable for the full extent of the Cuban government's initial confiscation; and (2) the damages sought by Plaintiff are disproportionate to the wrong allegedly committed by each of the Defendants and the actual damages suffered by Plaintiff. Plaintiff responds that Defendants mischaracterize the nature of Plaintiff's actual damages, understate the gravity of their offenses, and invoke the wrong legal standard by urging the Court to look to the ratio between statutory damages and actual damages, as opposed to whether the statutory damages are wholly out of

proportion to the offense and the purpose of the statute. The Court considers each argument in turn.

### i. Defendants Cannot Aggregate Damages

At the outset, the Court does not agree with Defendants' description of the damages in these cases. Defendants assert that Plaintiff seeks over $400 million in damages, but that assertion impermissibly aggregates the separate damages sought against four different Defendants. Therefore, the authorities that Defendants rely on with respect to aggregate damages are not persuasive. *See Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (concluding that aggregate damages in TCPA class action against single defendant violated Due Process); *Parker v. Time Warner Ent. Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) (recognizing that the per-consumer statutory damages in a class action "may expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages[.]"); *Montera v. Premier Nutrition Corp.*, --- F. Supp. 3d ----, 2022 WL 3348573, at *5 (N.D. Cal. Aug. 12, 2022) (finding aggregate statutory damages to be excessive where state legislature expressed clear preference that statutory damages are not available in class actions for violations of New York law). This is not a class action; and viewed properly, Plaintiff seeks damages of approximately $100 million against each of the Defendants, based upon their separate and distinct trafficking activities involving Plaintiff's property. Moreover, the Court previously rejected Defendants' position that each of their trafficking activities should be viewed as inflicting a single injury justifying the application of the one-satisfaction rule. *See Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724-BLOOM/McAliley, 2022 WL 3910707, at *2 (S.D. Fla. Aug. 31, 2022).

### ii. Defendants' "Use" Constitutes Unlawful Trafficking

Defendants argue that Title III impermissibly imposes a penalty tethered only to the original act of confiscation by the Cuban government, in that Title III's damages provision provides that any person who traffics in confiscated property pays the full amount of the certified claim, regardless of how minor or temporary the use of the property or whether a plaintiff has already been compensated for the value of the property. Instead, Defendants suggest that a more logical measure of damages is what Plaintiff could have fairly and reasonably charged for permission to use the property. This argument is a non-starter.[3]

First, the Court has already rejected Defendants' contention that Plaintiff's injury is attributable to the Cuban government's confiscation. *See Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d at 1228 ("While the injury may have its origin in the confiscation, NCL does not explain how its continued use of the Subject Property makes Plaintiff's harm less tangible today. Stated otherwise, Havana Docks' injury is 'real' because it is not receiving the benefit of its interest in the Subject Property and [Defendants'] subsequent trafficking in the confiscated property has undermined Plaintiff's right to compensation for that expropriation."); *see also MSC Cruises SA Co.*, 484 F. Supp. 3d at 1192 (same). As the Court has previously held,

> Properly viewed, Plaintiff, like any other Title III plaintiff, has sustained two distinct types of injuries—(1) confiscation of its property by the Cuban Government, and (2) subsequent trafficking in that confiscated property by Defendants. Defendants' proposed interpretation of injury conflates the two types by asserting that the harm caused by each is the same—namely the loss of the value of Plaintiff's property interest.

*Carnival Corp.*, 2022 WL 3910707, at *2.

---

[3] To the extent that Plaintiff argues that Defendants raise a facial challenge, the Court notes that it previously rejected Defendants' facial excessiveness challenge, *see Havana Docks Corporation. MSC Cruises SA Co.*, 484 F. Supp. 3d 1777, 1203 (S.D. Fla. 2020), and that Defendants specifically deny asserting a facial challenge, *see* ECF No. [451] at 18.

Second, the Court has already determined in summary judgment that "there is no threshold level or type of trafficking activity that must occur for liability to attach under the LIBERTAD Act." *Carnival Corp.*, 592 F. Supp. 3d at 1154. Moreover, the Court found that Defendants' "use" of the property was not minor or temporary. *See id.* at 1128-29.

Third, the Court has also rejected Defendants' contention that their "use" of the property in this case occurred only with the encouragement and licensure of the United States government. There is simply no evidence in the record in any of these cases that the United States government encouraged or licensed Defendants to engage in trafficking of Plaintiff's property, as defined under Title III. *See id.* at 1172 ("[T]he fact that OFAC promulgated licenses for traveling to Cuba, and Executive Branch officials, including the President, encouraged Defendants to do so, does not automatically immunize Defendants from liability if they engaged in statutorily prohibited tourism."); *see also MSC Cruises SA Co.*, 484 F. Supp. 3d at 1201 ("[T]he government's encouragement to travel to Cuba and to increase commercial relations with Cuba does not in any way absolve [Defendants] of [their] obligations to also comply with federal law—namely, by not trafficking in confiscated property without the consent of a Title III claimant.").

Finally, the Court has also rejected the argument that the injury is the loss of the value of the interest in Plaintiff's confiscated property, finding that it is irreconcilable with the plain language of Title III. *See Carnival Corp.*, 2022 WL 3910707, at *3 ("Title III explicitly seeks not only to compensate plaintiffs for the loss of their property interests due to the Cuban Government's confiscation, but also to deter third parties from benefitting from the Cuban Government's unjust confiscations."). As such, the more plausible measure of damages Defendants propose—the amount that Plaintiff could have charged for use of the property—conflicts with the purpose and language of Title III.

### iii. Title III Damages Are Not Constitutionally Excessive

"When a damages award is punitive in nature, it is subject to constitutional excessiveness review." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1309 (11th Cir. 2009) (citing *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1334 (11th Cir. 1999)). Defendants urge the Court to rely on cases discussing the proportionality of punitive damages, such as *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408 (2003), and *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), to find that the damages here are unconstitutionally excessive. Plaintiff responds that the standard applicable in evaluating excessiveness of punitive damages is not applicable to the analysis of statutory damages.

Upon review, neither *Gore* nor *State Farm* are particularly instructive in resolving the issue in the instant cases. Neither *Gore* nor *State Farm* involved statutory damages or analogous facts. Moreover, as Plaintiff points out and Defendants' authority recognizes, the standards applicable to review of punitive damages and statutory damages are different. *See Golan*, 930 F.3d at 962 n.12 ("The substantive standards for review of punitive damages and statutory damages under the Due Process Clause are different[.]"); *see also Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907 (8th Cir. 2012) ("The Supreme Court never has held that the punitive damages guideposts are applicable in the context of statutory damages."). Statutory damages violate due process only if the award is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919). "While courts may review for constitutionality, states and Congress 'still possess a wide latitude of discretion in' setting statutory penalties and damages." *Golan*, 930 F.3d at 962 (quoting *Williams*, 251 U.S. at 66). "*Williams* also directed that the constitutional inquiry focus on extreme cases, the proportionality of the award to the 'offense' in light of the statute's goals, and the overall

12

reasonableness of the award." *Wakefield v. ViSalus*, 51 F.4th 1109, 1121 (9th Cir. 2022). However, "*Williams* . . . disagreed that the constitutional inquiry calls for a comparison of an award of statutory damages to actual damages caused by the violation." *Capital Records, Inc.*, 692 F.3d at 909.

Upon review and consideration of Defendants' conduct in light of Title III's goals, the Court does not find the amount of the awards against each Defendant to be "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Williams*, 251 U.S. at 67. "In 1996, Congress passed the Helms-Burton Act in part 'to protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime.'" *Garcia-Bengochea*, 2022 WL 17170885, at *2 (quoting 22 U.S.C.§ 6022(6)). Title III's "goal was to deter trafficking of confiscated properties by providing 'United States nationals who were the victims of those confiscations with a judicial remedy in the courts of the United States.'" *Del Valle*, 2022 WL 17101160, at *1 (citing 22 U.S.C. § 6081(11)) (alterations omitted). The applicable "offense" that Title III addresses is "the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. § 6022(6). Defendants' offenses in these cases have been established, and the Court found that Defendants derived significant amounts of revenue— in the hundreds of millions of dollars each—from their wrongful trafficking activities, and to Plaintiff's detriment. *Carnival Corp.*, 592 F. Supp. 3d at 1144-45. Based upon the statute's primarily deterrent goal and the offenses at issue, an award of slightly over $100 million per Defendant is certainly reasonable. Indeed, a lower award as Defendants suggest would not effectively serve a deterrent purpose, since a lesser award could conceivably be considered merely a cost of doing business.

### III.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [444]**, is **GRANTED**. The Court will enter Final Judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure by separate order against each Defendant.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 30, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record