# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

HAVANA DOCKS CORPORATION,

     Plaintiff,

v.

CARNIVAL CORPORATION,

     Defendant.

_____/

**Case No. 19-cv-21724**
**BLOOM/McAliley**

HAVANA DOCKS CORPORATION,

     Plaintiff,

v.

MSC CRUISES SA,
MSC CRUISES SA CO, and
MSC CRUISES (USA) INC.,

     Defendants.

_____/

**Case No. 19-cv-23588**
**BLOOM/Louis**

HAVANA DOCKS CORPORATION,

     Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

     Defendant.

_____/

**Case No. 19-cv-23590**
**BLOOM/Louis**

HAVANA DOCKS CORPORATION,

     Plaintiff,

v.

NORWEGIAN CRUISE LINE HOLDINGS LTD.,

     Defendant.

_____/

**Case No. 19-cv-23591**
**BLOOM/Louis**

## DEFENDANTS' MOTION FOR STAY OF
## EXECUTION OF FINAL JUDGMENTS WITHOUT BOND
## OR WITH A REDUCED BOND PENDING UPCOMING APPEALS

Defendants Carnival Corporation d/b/a Carnival Cruise Line ("Carnival"), MSC Cruises S.A., MSC Cruises SA Co., and MSC Cruises (USA) Inc. (collectively, "MSC Cruises"), Royal Caribbean Cruises Ltd. ("Royal Caribbean"), and Norwegian Cruise Line Holdings Ltd. ("Norwegian") (collectively, "Defendants") move for an Order staying execution of the Final Judgments entered on December 30, 2022 [*Carnival*, ECF No. 544; *MSC Cruises*, ECF No. 395, *Royal Caribbean*, ECF No. 318; *Norwegian*, ECF No. 453] without bond or, alternatively, with a reduced bond, pending disposition of Defendants' upcoming appeals.[1]

## **INTRODUCTION**

On December 30, 2022, this Court entered an Order granting Plaintiff's Motion for Entry of Final Judgment ("Order") [ECF No. 452].  Following the Order and pursuant to Federal Rule of Civil Procedure 58, the Court entered separate Final Judgments against each of the cruise-line Defendants in the amount of the certified claim plus interest and trebled.  Specifically, the Court awarded a total judgment in the amount of $109,671,180.90 against Carnival, $109,848,747.87 against MSC Cruises, $109,848,747.87 against Royal Caribbean, and $109,848,747.87 against Norwegian.[2]  *See Carnival*, ECF No. 544; *MSC Cruises*, ECF No. 395, *Royal Caribbean*, ECF No. 318; *Norwegian*, ECF No. 453, (collectively the "Final Judgments").

Defendants intend to appeal the Final Judgments to the Eleventh Circuit.  As a result, Defendants move for an Order staying execution of the Final Judgments and waiving the discretionary bond requirement pending those appeals.  Defendants are financially solvent and clearly capable of paying the judgments against them, along with any post-judgment interest,

---

[1]    Following conferral, Plaintiff has agreed not to seek to execute on any of the judgments until fourteen (14) days after the Court's disposition of this Motion.

[2]    Each Final Judgment also included distinct amounts for attorneys' fees and costs.

following the outcome of these appeals, should those judgments stand.  Thus, requiring Defendants to post a bond is both unnecessary and simply a waste of money.  Under applicable authority, this is sufficient basis to waive the bond requirement.  Alternatively, Defendants request that the Court stay execution of the Final Judgments with a reduced bond.

## ARGUMENT

**I.    The Court Has the Discretion to Waive or Reduce the Bond Requirement.**

Rule 62(d) of the Federal Rules of Civil Procedure allows an appellant to obtain an automatic stay of execution of judgment pending appeal by posting a bond.  Fed. R. Civ. P. 62(d).  "But the Rule in no way necessarily implies that filing a bond is the only way to obtain a stay." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980).  "In the alternative, the appellant may move that the district court employ its discretion to waive the bond requirement."  *Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir. 1988); *accord Campbell v. Rainbow City, Alabama*, 209 F. App'x 873, 876 (11th Cir. 2006) (recognizing a district court's discretion to waive bond requirement).

In *Dillon*, the appellate court set forth criteria to assess whether to waive an appellate bond requirement including: (1) "the complexity of the collection process;" (2) assuming affirmance, the amount of time required to obtain a judgment; (3) the degree of confidence in the judgment debtor's availability of funds to pay the judgment; and (4) whether the ability to pay is "so plain that the cost of a bond would be a waste of money."  866 F.2d at 904–05 (reversing the district judge's denial of the motion for a stay without bond where, among other reasons, the defendant demonstrated availability of funds to satisfy the judgment and the plaintiff  "failed to demonstrate a single instance in which a claim of this type has gone unpaid"); *see Chmielewski v. City of St. Pete Beach*, No. 8:13-CV-3170-T-27MAP, 2016 WL 7438432, at *1 (M.D. Fla. Sept. 16, 2016)

(applying *Dillon* factors and granting stay of execution of final judgment pending appeal and waiving bond requirement where the defendant submitted evidence showing the availability of sufficient funds to pay the judgment, plus two years of post-judgment interest); *Fed. Prescription*, 636 F.2d at 761 ("[T]he district court may order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery."); *accord* Local Rule 62.1 (setting default rules for appeal bonds but stating that "[u]pon its own motion or upon application of a party the Court may direct otherwise").

"The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal." *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190–91 (5th Cir. 1979). "[A]n inflexible bond requirement would be inappropriate . . . where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money." *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986); *see also* 5 Bus. & Com. Litig. Fed. Cts. § 56:38 (5th ed.) ("A bond provides no benefit to the plaintiff unless difficulty is expected in executing the judgment, and its cost constitutes a dead-weight loss to the defendant."). Thus, "[t]he Court may waive the bond requirement and stay enforcement where the defendant's ability to pay the judgment is plain and where the judgment debtor is sufficiently solvent to facilely respond to a money judgment." *Goodloe v. Royal Caribbean Cruises, Ltd.*, No. 18-21125-CV, 2019 WL 12520072, at *1 (S.D. Fla. May 23, 2019) (internal marks omitted). As shown in the examples below, courts often have done just that:

- *Guzman v. Boeing Co*., No. CV 13-12615-JGD, 2019 WL 468195, at *8 (D. Mass. Feb. 6, 2019) – The court granted Boeing's motion to stay the execution of judgment pending its appeal based on Boeing's Q1 2018 10-Q, which reflected net earnings over $2 billion, "indicating that the defendant would readily be able to pay the judgment if affirmed on appeal." The court found the plaintiff's argument that

other recent crashes of Boeing planes may jeopardize Boeing's future solvency "too speculative to merit consideration." *Id.*

- *Trade AM Int'l, Inc. v. Cincinnati Ins. Co.*, No. 1:08-CV-3711-ECS, 2012 WL 12957061 (N.D. Ga. Apr. 16, 2012) – The court waived the bond requirement because the defendant's financial records showed that the defendant was "more than capable" of paying the judgment since its assets were "many multiples of the amount of damages awarded."

- *Exxon Corp. v. Esso Worker's Union, Inc.*, 963 F. Supp. 58 (D. Mass. 1997) – The court dispensed with a bond in light of "Exxon's solvency and clear ability to satisfy the judgment if affirmed on appeal."

- *Corey Airport Servs., Inc. v. City of Atlanta*, No. 1:04-CV-3243-CAP, 2011 WL 13216938 (N.D. Ga. Apr. 6, 2011) – The court waived the bond requirement based on the defendant's representation that it maintained $40 million in unallocated money from which it could pay the judgment.

- *Arban v. W. Pub. Corp.*, 345 F.3d 390 (6th Cir. 2003) – The Sixth Circuit affirmed the trial court's decision to grant a stay without a bond "[i]n light of the vast disparity between the amount of the judgment in this case and the annual revenue of the group of which [defendant] is a part."

- *In re Oil Spill By The Amoco Cadiz Off the Coast of France On Mar. 16, 1978*, 744 F. Supp. 848 (N.D. Ill. 1990) – The court dispensed with a bond requirement where Amoco's net income for the relevant quarter was almost three times the amount of liability (which was over $160 million). The plaintiffs argued that Amoco's financial prospects could decline during the course of the appeal, but the court found that argument "too speculative to merit consideration—particularly where the plaintiffs have not pointed to anything looming on the horizon which is reasonably likely to send Amoco spiraling into bankruptcy." *Id.* at 850 n.2.

- *Fed. Prescription*, 636 F.2d at 761 – The D.C. Circuit affirmed the trial court's decision to waive the bond requirement where the defendant's net worth was forty-seven times the amount of the damages award and the judgment debtor was a longtime resident.

Notably, in situations like this, waiving (or at least reducing) the bond requirement can benefit the judgment creditor as well. While a bond provides negligible benefit to the judgment creditor in the absence of a collection risk (as is the case here), the judgment creditor may nonetheless be responsible for the costs of such a bond if the judgment debtor prevails on appeal. In other words, if Defendants prevail on appeal, Plaintiff will have to reimburse Defendants for

the costs of the bond each Defendant posted. Fed. R. App. Proc. 39(e)(3) (premiums paid for bond are taxable costs); *cf. Campbell v. Rainbow City, Alabama*, 209 F. App'x 873, 876 (11th Cir. 2006) (holding that the district court did not abuse its discretion in declining to tax unsuccessful appellee with bond premium only because the appellant "procured the bond on its own, without being required to do so by the district court to obtain a stay on appeal" and "the court likely would have waived the bond requirement if [appellant] had asked" given that the appellant had "little likelihood of defaulting on the judgment").

## II. The Court Should Exercise Its Discretion Here Because There Is No Collection Risk as to Defendants and the Cost of a Bond Would Be a Waste of Money.

As explained below, each Defendant is a well-established, decades-old, multi-national company, with assets worth orders of magnitude more than the judgment amount against it, total revenues dwarfing the amounts at issue, substantial cash reserves, and significant roots in Miami. As such, there is no risk that Plaintiff will be unable to collect the Final Judgment against each Defendant if that judgment is affirmed on appeal.[3]

### A. Carnival

Final Judgment has been entered in this matter against Carnival in the total amount of $109,671,180.90. *See Carnival*, ECF No. 544. Carnival will file an appeal from that judgment.

---

[3] It should also be noted that, particularly given the untested nature of private causes of action under the Helms-Burton Act, like these, Defendants have numerous substantive arguments to raise on appeal, any one of which could result in the reversal of summary judgment in Plaintiff's favor. Indeed, the Court itself has recognized the novel questions it has been called upon to decide throughout this case. *See* September 21, 2022, Status Conference Tr., at 45:25-46:2 (The Court: "it certainly has been somewhat – well, let me say novel in terms of the decisions that the Court has been required to make"). Defendants submit that these circumstances should also factor into the Court's consideration of whether to waive the bond requirement pending the outcome of the appellate process. *See, e.g.*, *Allstate Ins. Co. v. Vizcay*, No. 8:11-CIV-804-T-EAK, 2015 WL 1346314, at *3 (M.D. Fla. Mar. 24, 2015) (noting that "the likelihood of success" on appeal is among the factors to be considered when deciding whether to stay the effect of a decision pending appeal).

Carnival has been doing business for over 50 years with a strong presence in the Southern District of Florida—its operational headquarters is located in Miami-Dade County, Florida.  As disclosed on Carnival's website, and as filed with the Securities and Exchange Commission (the "SEC"), Carnival has assets far in excess of the judgment in this case.  *See* Carnival Corporation and PLC's Report on Form 8-K filed with the SEC on December 21, 2022, a true and correct copy of which is attached here as Exhibit "1".  More specifically, as of November 30, 2022, the end of its fiscal year, Carnival had "$8.6 billion of liquidity including cash, restricted cash from the 2028 Senior Priority Notes which is now unrestricted, and borrowings available under [its] revolving credit facility." *Id.* at 6.  Moreover, Carnival ended its 2022 fiscal year with over $51 billion in total assets. *See id.* at 14.

Based on the above and Carnival's SEC financial filings, Carnival clearly has ample assets to satisfy the $109,671,180.90 money judgment in this matter, "has a present financial ability to pay the money judgment" upon a decision by the Eleventh Circuit, and will remain solvent during the period of appeal.  *Rashad v. Fulton County Dept. of Health and Wellness*, 2010 WL 2821845, 4 (N.D. Ga. 2010) (citing *Poplar Grove*, 600 F.2d at 1191).  Carnival's documented total assets are over 460 times the amount of the damage award.  *See Fed. Prescription*, 636 F.2d at 761. Plaintiff will not experience difficulty in executing the judgment against Carnival as Carnival will promptly pay any judgment against it, including post-judgment interest at the appropriate rate if the judgment is affirmed on appeal.  *See Rashad*, 2010 WL 2821845, *5 (quoting *Dillon* factors). It follows that posting a bond would be wasteful for Carnival and would not provide any additional protection for Plaintiff's interests.

### B.   MSC Cruises

Final Judgment has been entered against MSC Cruises in the amount of $109,848,747.87. *See MSC Cruises*, ECF No. 395.  MSC Cruises will appeal that judgment.

MSC Cruises has operated for over 30 years, while the larger MSC Group to which it belongs has been in existence for over 50 years.  MSC Cruises has a significant presence in the Southern District of Florida, as demonstrated by its 60+ year ground lease for an MSC Cruises Terminal currently under construction at PortMiami and MSC Cruises' ships that regularly berth out of Florida.  As disclosed in MSC Cruises' 2021 Annual Report, MSC Cruises has income and assets far in excess of the judgment in this case.  *See* MSC Cruises' 2021 Annual Report, a true and correct copy of which is attached hereto as Exhibit "2".  Specifically, for the year 2021, MSC Cruises had total revenues of €788.5 million, €12.86 billion in total assets, and €418.5 million in cash and cash equivalents.  *See* Exhibit "2" at pp. 24, 36, 56.  ████████████████

████████████████████████████████████████████████████████

████████████████   *See* Exhibit "3", at ¶ 5 (Declaration of Massimiliano Mio).

Thus, MSC Cruises clearly has ample assets to satisfy the $109,848,747.87 judgment against it in the event that the judgment is upheld on appeal.  Indeed, MSC Cruises' documented total assets are over 124 times the amount of the damage award.  *See Fed. Prescription*, 636 F.2d at 761.  Moreover, MSC Cruises' financial position is likely to improve in the coming years as global demand in the cruise industry accelerates and as MSC Cruises continues to expand its own fleet.  *See* Exhibit "2" at 40 (noting that MSC Cruises had 19 cruise ships as of 2021 but that its fleet "is projected to grow to 27 cruises [*sic*] ships by 2026").  In other words, MSC Cruises plainly "has a present financial ability to pay the money judgment" upon a decision by the Eleventh Circuit and will remain solvent during the period of appeal.  *Rashad*, 2010 WL 2821845, at *4 (citing

*Poplar Grove*, 600 F.2d at 1191).  MSC Cruises will promptly pay any judgment against it, including post-judgment interest at the appropriate rate if the judgment is affirmed on appeal.  *See Rashad*, 2010 WL 2821845, at *5 (quoting *Dillon* factors).  Under these circumstances, waiving the bond requirement will not prejudice Plaintiff's interests.  Meanwhile, posting a bond would be wasteful for MSC Cruises and would not provide any additional protection for Plaintiff's interests.

### C.  Royal Caribbean

Royal Caribbean has been in business for over fifty years and, in light of its well-documented size and financial position, there is no doubt that Royal Caribbean can pay the Final Judgment against it in a timely manner if the judgment is affirmed on appeal.  As disclosed in publicly-available SEC filings, Royal Caribbean has well over $32 billion in total assets—more than 285 times the total amount of Plaintiff's judgment against it.  *See* Royal Caribbean's 2022 Third Quarter Report 2022 on Form 10-Q, a true and correct copy of which is attached here as Exhibit "4", at p. 3 (reflecting $33,464,190,000 in assets as of September 30, 2022); Royal Caribbean's Annual Report on Form 10-K, a true and correct copy of which is attached here as Exhibit "5", at p. F-7 (reflecting $32,258,355,000 in assets as of December 31, 2021).  Royal Caribbean revenues approached $3 billion dollars *in the last reported quarter alone*.  Exhibit "4" (Royal Caribbean 10-Q) at p. 1 (reflecting $2,993,075,000 in total revenues for the quarter ending September 30, 2022).  And, as of September 30, 2022, Royal Caribbean had over $1.6 billion of cash and cash equivalents on hand (14 times the total judgment amount), with another $1.5 billion available through undrawn credit facilities.  Exhibit "5" (Royal Caribbean 10-Q) at p. 8.

Moreover, any argument by Plaintiff that Royal Caribbean's ability to pay the judgment may change during the pendency of the appeal is farfetched and speculative.  *See In re Oil Spill by the Amoco Cadiz*, 744 F. Supp. at 851, n.2 (finding the plaintiff's argument that Amoco may suffer

some unforeseen financial disaster to be "too speculative to merit consideration"). To the contrary, Royal Caribbean's financial position is likely to continue to improve as global demand for travel accelerates. Indeed, Royal Caribbean recently saw its highest levels of bookings in its 53-year history. *See* December 1, 2022, Press Release, *Royal Caribbean International Breaks Bookings Records for Third Time in 2022*, available at https://www.rclinvestor.com/press-releases/release/?id=1631. Royal Caribbean's entire fleet is back in operation, and there are plans to further expand the fleet this year. *See* Royal Caribbean's Q3 2022 Earnings Call Transcript, a true and correct copy of which is attached here as Exhibit "6". As explained on a recent earnings call, "[t]he successful return of [Royal Caribbean's] business to full operations in the accelerating demand environment positions [it] well to deliver on [its] expectations of record yields, and record adjusted EBITDA in 2023." Exhibit "6" (Royal Caribbean's Earning Call Transcript) (discussing three-year financial performance program implemented by Royal Caribbean based on "moderate capacity growth, moderate yield growth and strong cost discipline").

Finally, should collection be necessary, a large portion of Royal Caribbean's substantial assets are easily within Plaintiff's reach—Royal Caribbean is, after all, headquartered within this very District. In short, waiver of the bond requirement would not cause Plaintiff to sustain any prejudice, as it is readily apparent that Royal Caribbean has a present financial ability to pay the judgment and is likely to maintain this ability throughout the appeal process.

### D.   Norwegian

As to Norwegian, Final Judgment has been entered in this matter in the total amount $112,926,823.48 (inclusive of attorneys' fees and costs), ECF No. 453, which Norwegian will appeal. If the judgment is not reversed as a result of that appeal, Norwegian has the financial resources and assets to support the requested stay of execution on the Final Judgment without posting a bond. As disclosed in numerous publicly available SEC filings, Norwegian has nearly

$19 billion in total assets, which is nearly **168 times** the total amount of Plaintiff's Final Judgment. *See* Norwegian's Third Quarter Report 2022 on Form 10-Q, a true and correct copy of which is attached here as Exhibit "7", at 5 (reflecting $18,950,929,000 in assets as of September 30, 2022). In fact, Norwegian's total assets are up over $221,000,000 since December 31, 2021. Exhibit "7" (Norwegian's 10-Q), at p. 5. Moreover, following just the first three quarters of 2022 (i.e., as of September 30, 2022), Norwegian's total revenues exceeded $3.3 billion (nearly thirty (30) times the total amount of Plaintiff's Final Judgment against Norwegian). Exhibit "7" (Norwegian's 10-Q), at p. 3. And as of that date, Norwegian had more than $1.1 billion in cash and cash equivalents (approximately ten (10) times the amount of Plaintiff's Final Judgment against Norwegian), and had another $1 billion in undrawn credit available to it. Exhibit "7" (Norwegian's 10-Q), at p. 10. Norwegian's financial position is only likely to grow from here as global demand continues to climb: Norwegian has three state-of-the-art ships coming online this year and will have five additional ships added to its fleet by 2027. Exhibit "7" (Norwegian's 10-Q), at p. 24. Finally, there is no valid reason to believe that any of these financial circumstances will change in any way material to this matter during the pendency of the upcoming appeal, making the request to dispense with the discretionary bond requirement all the more justified. *See In re Oil Spill by the Amoco Cadiz*, 744 F. Supp. at 851, n.2 (rejecting plaintiff's argument that a bond should be required because defendant may suffer some unforeseen financial disaster to be "too speculative to merit consideration").

In addition to its well-established financial stability, Norwegian maintains deep roots in this District. Indeed, Norwegian is the oldest cruise line operating in Miami, having been founded here over half a century ago (in 1966). Moreover, Norwegian's commitment to its Miami-based headquarters is indisputable: Norwegian has been headquartered out of Miami since its founding

in 1966; for 2023, will operate nearly 200 sailings from PortMiami; currently holds a 30-year lease to its PortMiami Terminal (newly signed in 2021, which it recently renovated in connection with Miami-Dade County); and employs over 1,900 people at its Miami headquarters alone.

Even considered independently, let alone collectively, these factors demonstrate Norwegian's deep local roots and clear ability to satisfy the Final Judgment should such prove necessary. *See Rashad*, 2010 WL 2821845, *4. Thus, as with the other cruise lines, Norwegian's ability to pay the Final Judgment (or some lesser amount) following the outcome of the upcoming appeal would not present a difficulty to Plaintiff, and Norwegian will promptly pay any judgment against it, including post-judgment interest at the appropriate rate, if the judgment is affirmed. *See Rashad*, 2010 WL 2821845, at *5 (quoting *Dillon* factors). It therefore follows that posting a bond would be wasteful and would not provide any meaningful additional protection for Plaintiff's interests. Thus, such bond requirement should be waived.

### III. Defendants Will Be Prejudiced if They Are Required to Pay Bond Premiums for Which They May Never Be Reimbursed Upon Successful Appeals.

Defendants' respective ability to pay the Final Judgment amounts is so evident that the cost of the bonds—likely more than $1-2.5 million dollars **per Defendant**—is literally a waste of money. On the other hand, **Defendants** face a collection risk if they are forced to post bonds. As noted, if the Final Judgment is reversed, Plaintiff would be responsible for the costs of the bond. *See* Fed. R. App. Proc. 39(e)(3). Given that Plaintiff is a shell corporation, existing only on paper and for the sole purpose of maintaining this action, there are substantial reasons to question whether Defendants could actually recoup the premiums for the bonds, which would likely total several million dollars. *See Trade AM Int'l, Inc.*, 2012 WL 12957061, at *1 (dispensing with bond after noting that "if Defendant prevails on appeal and the judgment is reversed, it may have difficulty obtaining restitution from Plaintiff for the costs associated with the posting of a

supersedeas bond"). The Court should, therefore, exercise its discretion to dispense with any bond requirement.

## IV.    In the Alternative, the Court Should Reduce the Required Bond.

Alternatively, the Court should reduce the required bond to cover only the compensatory portions of the Final Judgments, i.e., the amount of the certified claim with interest (before trebling) and attorneys' fees and costs for each Defendant—particularly considering that, as this Court itself has noted, the treble damages are punitive in nature and simply a windfall to Plaintiffs. *See, e.g., Havana Docks Corp. v. Norwegian Cruise Line Holdings Ltd.,* [ECF No. 343] ("The Act calculates damage awards using the value of the property, but this is designed to be compensatory for a plaintiff and ***punitive*** for a defendant . . . [T]he damages are plainly designed to be ***punitive*** and therefore legal in character.  The Act's inherently ***punitive*** provision for treble damages . . . .") (emphases added); *Olympia Equip.,* 786 F.2d at, 797 ("[T]he district judge made little effort to explore the possibility of a bond that would secure a part of Olympia's judgment—perhaps the $12 million in compensatory damages.  The punitive damages in the award are a windfall to Olympia, their purpose (their principal purpose, anyway) being to punish and deter antitrust violators rather than to compensate the victims."); *Slip N' Slide Recs., Inc. v. Teevee Toons, Inc.*, No. 05-21113-CIV, 2007 WL 1489810, at *3 (S.D. Fla. May 18, 2007) ("[T]he Court concludes that a 110% bond on the full amount of the judgment is not required. . . . To preserve the status quo in the case, and taking into account TVT's financial condition, the Court will require the pledge not to dissipate assets in addition to the posting as security of 100% of the compensatory damage portion of the judgment.").[4]

---

[4]      *See also Umbrella Bank, FSB v. Jamison*, 341 B.R. 835, 842–43 (W.D. Tex. 2006) ("This Court finds that the purpose of a supersedeas bond, to preserve the status quo, is met in this cause by setting a supersedeas amount that includes compensatory damages."), abrogated on other grounds by *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 771 F.3d 301 (5th Cir. 2014); 5 Bus. & Com.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and stay execution of the Final Judgments entered on December 30, 2022 [*Carnival*, ECF No. 544; *MSC Cruises*, ECF No. 395, *Royal Caribbean*, ECF No. 318; *Norwegian*, ECF No. 453] without bond or, alternatively, with a reduced bond, pending disposition of Defendants' appeals.

## CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to Southern District of Florida Local Rule 7.1(a)(3), undersigned counsel certify that they conferred in good faith with Plaintiff's counsel regarding this Motion, and the Parties have not been able to resolve the issues raised in the Motion.

Nonetheless, as noted above, *see supra* at n.1, Plaintiff has agreed not to seek to execute on any of the judgments until fourteen (14) days after the Court's disposition of this Motion. Defendants appreciate this agreement, as it allows the Court to resolve this Motion in an orderly fashion without the risk of Plaintiff seeking to execute on those judgments before the Court is able to do so.


Dated: January 12, 2023

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022

By: */s/ Stuart H. Singer*
Stuart H. Singer

**HOGAN LOVELLS US LLP**
600 Brickell Avenue, Suite 2700
Miami, Florida 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550

By: */s/ Allen P. Pegg*
Richard C. Lorenzo

---

Litig. Fed. Cts. § 56:38 (5th ed.) ("Unless there is a concern that assets may be removed from the jurisdiction or secreted, a bond covering the compensatory damages may be found adequate to justify a stay pending appeal.").

Florida Bar No. 377325
ssinger@bsfllp.com
Meredith Schultz
Florida Bar No. 29536
mschultz@bsllp.com
Pascual A. Oliu
Florida Bar No. 0107737
Corey P. Gray
Florida Bar No. 0115473
cgray@bsfllp.com

Pedro A. Freyre
Florida Bar No. 192140
Pedro.freyre@akerman.com
**AKERMAN LLP**
98 S.E. 7th Street, Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600

George J. Fowler, III (admitted *pro hac vice*)
gfowler@joneswalker.com
Luis Llamas
Florida Bar No. 89822
llamas@joneswalker.com
**JONES WALKER LLP**
201 St. Charles Avenue
New Orleans, LA 70170
Telephone: (504) 582-8752

*Counsel for Carnival Corporation*

**VENABLE LLP**
600 Massachusetts Avenue
Washington, D.C. 20001
Telephone: (202) 344-4703
Facsimile: (202) 344-8300

By: */s/ J. Douglas Baldridge*
Florida Bar No. 708070
JBaldridge@venable.com
Andrew T. Hernacki (admitted *pro hac vice*)
ATHernacki@venable.com
Justin B. Nemeroff (admitted *pro hac vice*)
JBNemeroff@venable.com

*Counsel for MSC Cruises*

Florida Bar No. 071412
richard.lorenzo@hoganlovells.com
Allen P. Pegg
Florida Bar No. 597821
allen.pegg@hoganlovells.com

*Counsel for Norwegian Cruise Line
Holdings Ltd.*

**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

By: */s/ Scott D. Ponce*
Scott D. Ponce
Florida Bar No. 0169528
sponce@hklaw.com

*Counsel for Royal Caribbean Cruises Ltd.*

14

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on January 12, 2023, the foregoing was filed with the Clerk of

Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.


By:<u>/s/ *Allen P. Pegg*</u>
Allen P. Pegg