## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

HAVANA DOCKS CORPORATION,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

**Case No. 19-cv-21724**
**BLOOM/MCALILEY**

HAVANA DOCKS CORPORATION,

      Plaintiff,

v.

MSC CRUISES SA,
MSC CRUISES SA CO, and
MSC CRUISES (USA) INC.,

      Defendants.

_____/

**Case No. 19-cv-23588**
**BLOOM/LOUIS**

HAVANA DOCKS CORPORATION,

      Plaintiff,

v.

ROYAL CARIBBEAN CRUISES,
LTD.,

      Defendant.

_____/

**Case No. 19-cv-23590**
**BLOOM/LOUIS**

HAVANA DOCKS CORPORATION,

      Plaintiff,

v.

NORWEGIAN CRUISE LINE
HOLDINGS, LTD.,

      Defendant.

_____/

**Case No.: 19-cv-23591**
**BLOOM/LOUIS**

## ORDER ON MOTION FOR STAY OF EXECUTION OF FINAL JUDGMENTS WITHOUT BOND OR WITH A REDUCED BOND PENDING APPEALS

**THIS CAUSE** is before the Court upon Defendants Carnival Corporation d/b/a Carnival Cruise Line ("Carnival"), MSC Cruises S.A., MSC Cruises SA Co., and MSC Cruises (USA) Inc. (collectively, "MSC Cruises"), Royal Caribbean Cruises Ltd. ("Royal Caribbean"), and Norwegian Cruise Line Holdings Ltd.'s ("Norwegian") (collectively, "Defendants") Motion for Stay of Execution of Final Judgments without Bond or with a Reduced Bond Pending Upcoming Appeals. ECF No. [455]. Plaintiff Havana Docks Corporation filed a Response in Opposition to the Motion, ECF No. [467], to which Defendants filed a Reply, ECF No. [484]. The Court has reviewed the Motion, all opposing and supporting submissions, the record, the applicable law, and is otherwise fully advised. For the reasons set forth below the Motion is denied.

### I.    BACKGROUND

On December 30, 2022, the Court granted Plaintiff's Motion for Entry of Final Judgment, *see* ECF No. [452], and entered four separate Final Judgments in favor of Havana Docks against each Defendant. The Final Judgments entered were in the amounts of $109,671,180.90 against Carnival, $109,848,747.87 against MSC Cruises, $109,848,747.87 against Royal Caribbean, and $109,848,747.87 against Norwegian. *See* Carnival, ECF No. [544]; MSC Cruises, ECF No. [395], Royal Caribbean, ECF No. [318]; Norwegian, ECF No. [453], (collectively the "Final Judgments"). The record reflects that Defendants have filed Notices of Appeal and Plaintiff has filed a Notice of Cross Appeal with the Eleventh Circuit Court of Appeals. *See* ECF Nos. [461], [463]-[465], [468].

On January 12, 2023, Defendants filed the instant Motion, in which they seek a stay of the execution of the Final Judgments pending appeal without bond or with reduced bond. ECF No. [455]. Defendants assert that they are financially solvent and capable of paying the judgments

against them as well as any post-judgment interest, such that the requirement of a bond is unnecessary and a waste of money. *Id*. In the alternative, Defendants request that the Court stay execution of the Final Judgments with a reduced bond. *Id*. Plaintiff responds that the Court should require full security because Defendants have not established their continuing ability to pay the Final Judgments or offered a principled basis to reduce the required security. ECF No. [467].

**II.   LEGAL STANDARD**

Federal Rule of Civil Procedure 62(d) allows a party to obtain an automatic stay of execution of a judgment pending appeal by posting a bond. *See* Fed. R. Civ. P. 62(d). "The purpose of the supersedeas bond is to secure the prevailing party against the risk that the judgment debtor will be unable to meet the obligations pending appeal and to protect the prevailing party from the costs that it incurs in foregoing execution of judgment until the appeal is decided." *Chalfonte Condo. Apartment Ass'n, Inc. v. QBE Ins. Corp.*, 695 F.3d 1215, 1232 (11th Cir. 2012). "It is within the court's discretion to fashion a security arrangement that protects the rights of both the judgment creditor and the judgment debtor." *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1498 (11th Cir. 1986).

Local Rule 62.1 states that "[a] supersedeas bond or other security staying execution of a money judgment shall be in the amount of 110% of the judgment, to provide security for interest, costs, and any award of damages for delay. Upon its own motion or upon application of a party the Court may direct otherwise." S.D. Fla. L.R. 62.1. "The district court … retains the discretion to waive the bond requirement." *Hurtado v. Balerno Int'l Ltd.*, 17-62200-CIV, 2018 WL 10517082, at *1 (S.D. Fla. July 11, 2018) (citing *United States v. Certain Real & Personal Property Belonging to Hayes*, 943 F.2d 1292, 1296 (11th Cir. 1991) (en banc)). The relevant considerations for waiving the bond requirement include:

> If a judgment debtor objectively demonstrates a present financial ability to facilely respond to a money judgment and presents to the court a financially secure plan for maintaining that same degree of solvency during the period of an appeal, the court may then exercise a discretion to substitute some form of guaranty of judgment responsibility for the usual supersedeas bond. Contrariwise, if the judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden, the court similarly is free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection to the judgment creditor.

*Poplar Grove Planting & Ref. Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979).[1]

## III.   DISCUSSION

As an initial matter, Rule 62(d) permits an automatic stay upon the posting of a bond and Plaintiff does not object to a stay of the execution of judgment as long as it is secured by a bond. The issue before the Court is whether a supersedeas bond or other security is necessary to secure Plaintiff's ability to collect on the Final Judgments while the appeals are pending, and if so, the proper amount of the necessary security. As noted, Defendants contend that the Court should exercise its discretion to waive the bond requirement because they are financially solvent and capable of paying the judgments against them as well as any post-judgment interest, such that the requirement of a bond is unnecessary and a waste of money. In the alternative, Defendants request that the Court stay execution of the Final Judgments with a reduced bond. Plaintiff responds that the Court should require full security because Defendants have not established their continuing ability to pay the Final Judgments or offered a principled basis to reduce the required security.

Federal Rule of Civil Procedure 62(b) allows a party to "obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). "There are two circumstances, however, where federal

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered before October 1, 1981.

courts have found a bond unnecessary to stay execution." *Ctr. for Individual Rights v. Chevaldina*, 16-20905-CIV, 2021 WL 8774266, at *1 (S.D. Fla. Nov. 2, 2021). "In these two circumstances the posting of a bond to secure a stay pending appeal is inappropriate: (1) where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money, and, (2) where the requirement would put the defendant's other creditors in undue jeopardy." *Avirgan v. Hull*, 125 F.R.D. 185, 186 (S.D. Fla. 1989). "The court can only dispense with the requirement for a bond after the judgment debtor has objectively demonstrated his ability to satisfy the judgment and maintain the same degree of solvency through the appellate process." *Id*. at 187.

Defendants argue that the Court should exercise its discretion to waive the requirement of a bond because there is no risk that Plaintiff will be unable to collect the Final Judgment against each Defendant if the Final Judgment is affirmed by the Eleventh Circuit. Defendants urge the Court to look to the Seventh Circuit's *Dillon*[2] factors which they contend are "widely applied in this Circuit." ECF No. [484] at 11. Defendants assert that all five *Dillon* factors weigh in their favor and support the waiver of the bond requirement in this case.

Plaintiff responds that the out-of-circuit standard set forth in *Dillon* does not support Defendants' position because the first, third, and fourth factors weigh against waiving the bond. Plaintiff contends that, under the test binding on this Court, Defendants do not satisfy the circumstances where a bond is not necessary or appropriate to secure a stay pending appeal. Defendants are foreign entities with byzantine corporate structures and have offered no evidence

---

[2] The *Dillon* factors include:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment ..; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money ..; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th 1988)).

of their continuing ability to pay the Final Judgments nor have they argued that the bond requirement would put their other creditors in undue jeopardy.

The Court examines whether Defendants have met their burden of demonstrating that a bond is unnecessary by considering the sufficiency of each Defendant's assets and whether the Defendants have presented a plan to maintain sufficient assets to satisfy the Final Judgments against them throughout the pendency of the appeals.

### A.  Present Financial Ability

Defendants argue that they have sufficient assets to satisfy the Final Judgments entered against them both now and throughout the pendency of the appeals. Plaintiff responds that the assets are not sufficient in light of the Defendants' outstanding debts and other factors, such as the Covid-19 pandemic from which it argues Defendants have not recovered. The Court considers each Defendant's ability to pay the Final Judgments and whether that ability is so plain that the cost of the bond would be a waste of money and should be waived.

### i.  Carnival

Carnival's Form 8-K dated December 21, 2022, ECF No. [455-1], demonstrates that as of November 30, 2022, Carnival had more than $51 billion in total assets. Carnival indicates that it has $8.6 billion of liquidity, including cash. Carnival suggests that with documented total assets more than 460 times the Final Judgment, they will remain solvent and will promptly pay any judgment, including post-judgment interest at the appropriate rate if the judgment is affirmed on appeal. Plaintiff responds that the available cash is inadequate to fund forecasted capital expenditures and principal repayments on outstanding debt maturities. Plaintiff contends that Carnival's decision on March 30, 2020, to suspend payment of dividends, which remains in effect, is indicative of the inadequacy of the cash flow generated by Carnival's operations.

In light of Carnival's significant liquid assets well in excess of the Final Judgment, the Court finds that Carnival has the present financial ability to facilely respond to the money judgment against it.

### ii.    MSC Cruises

MSC Cruises provided their 2021 Annual Report, ECF No. [455-2], which demonstrates that as of December 31, 2021, MSC Cruises had more than €12.8 billion in total assets, which will be ample to satisfy the Final Judgment entered against them. MSC Cruises indicates that its financial position is likely to improve, as global demand in the cruise industry accelerates and as MSC Cruises expands its fleet of ships. MSC Cruises asserts that it will remain solvent during the period of appeal, and will promptly pay any judgment against it, including post-judgment interest at the appropriate rate if the judgment is affirmed on appeal. Plaintiff responds that none of MSC Cruises' assets are easily convertible to be used as liquidity and that the cash liquidity it does have appears to come from its sole investor rather than as the result of its operations. Plaintiff also suggests that the financial instruments MSC Cruises must repay will challenge its solvency.

MSC Cruises has provided sufficient evidence to satisfy its burden of demonstrating that presently MSC has the financial ability to easily pay the Final Judgment.

### iii.    Royal Caribbean

Royal Caribbean provided its Form 10Q, ECF No. [455-4], which demonstrates that as of September 30, 2022, Royal Caribbean had more than $33 billion in total assets which will be ample to satisfy the Final Judgment entered against it. Royal Caribbean also provided its annual report on Form 10-K from December 31, 2021. ECF No. [455-5]. It argues that its $1.6 billion of cash and cash equivalents on hand and another $1.5 billion available through undrawn credit facilities are more than sufficient to satisfy the Final Judgment. Royal Caribbean suggests that any argument

that its ability to pay the Final Judgment may change is farfetched and speculative and that it has a present financial ability to pay and is likely to maintain that ability throughout the appeal process. Plaintiff responds that Royal Caribbean has not demonstrated that it will be able to pay the Final Judgment at the conclusion of the appeal because its total assets consist primarily of non-liquid assets, some of which are securitized by outstanding debt. Plaintiff argues that Royal Caribbean's $2.75 billion in liquidity is inadequate to pay its debt coming due in the next few years as well as its new ship orders. Plaintiff notes that Royal Caribbean, like Carnival, suspended the payment of dividends in the second quarter of 2020 and that suspension remains in effect.

Royal Caribbean has sufficiently demonstrated its present ability to satisfy the Final Judgment against it given its $1.6 billion of cash and cash equivalents on hand which significantly exceeds the amount of the Final Judgment.

### iv.    Norwegian

Norwegian filed their Form 10-Q, ECF No. [455-7], which demonstrates that as of September 30, 2022, Norwegian had more than $18.5 billion in total assets which will be ample to satisfy the Final Judgment entered against it. Norwegian also states that it had more than $1.1 billion in cash and cash equivalents and another $1 billion in undrawn credit available to it. Norwegian asserts that its financial position is only likely to grow, and that there is no valid reason to believe that its financial circumstances will change in any way material to this matter during the pendency of appeal. Plaintiff responds that Norwegian's finances have been battered by the pandemic and that its total assets, consist of $1.2 billion in cash and cash equivalents, but the remaining assets are not easily convertible. Plaintiff argues that Norwegian has $11.5 billion in long-term debt, including finance lease obligations maturing within the next 5 years, does not pay its shareholders dividends, and like the other cruise-line Defendants, Plaintiff argues Norwegian

has not carried its burden of establishing the ability to pay the judgment and remain solvent through the pendency of the appeals.

Norwegian has supplied ample evidence to satisfy its burden of showing the present ability to pay the Final Judgment against it.

### B. Ability to Remain Solvent During Appeal

Having determined that each Defendant met its burden of demonstrating the present ability to facilely satisfy the Final Judgment against it, the Court turns to whether Defendants present financially secure plans to maintain the same degree of solvency through the appellate process. *See Poplar Grove*, 600 F.2d at 1191. As stated above, "[t]he court can only dispense with the requirement for a bond after the judgment debtor has objectively demonstrated his ability to satisfy the judgment and maintain the same degree of solvency through the appellate process." *Avirgan*, 125 F.R.D. at 186.

Plaintiff argues that Defendants have not objectively demonstrated their ability to remain solvent. In support of its position, Plaintiff cites to multiple district court cases in which courts found that the party seeking a stay without posting a bond had not satisfied their burden of providing evidence of their solvency or ability to remain solvent. *See Procaps S.A. v. Patheon Inc.*, 2017 WL 11558275, at *2 (S.D. Fla. Nov. 3, 2017); *Cunningham v. Ariel's Gas & Food, Corp.*, 2007 WL 3274451, at * 1 (S.D. Fla. Nov. 5, 2007); *Rashad v. Fulton County Dept. of Health & Wellness*, 2010 WL 2821845, at *5 (N.D. Ga. Jul. 15, 2010); *Engineered Tax Services, Inc. v. Scarpello Consulting, Inc.,* 16-81795-CV, 2018 WL 5801054 (S.D. Fla. Nov. 6, 2018), *report and recommendation approved,* 16-81795-CIV, 2018 WL 6320893 (S.D. Fla. Nov. 29, 2018). Because the moving party in those cases had not met their burden of showing even a present ability to

satisfy the judgments against them, the cases are distinguishable. The Court has already recognized that Defendants offered sufficient evidence to demonstrate their present solvency.

In order to determine whether evidence of present solvency and a stated intent to remain solvent is sufficient to constitute a "plan" the Court looks to district courts cases from this circuit, cited by Defendants, in which courts granted a stay and waived the bond requirement.

In *Chmielewski v. City of St. Pete Beach*, the Court addressed a similar motion to stay execution of judgment pending appeal and to waive supersedeas bond. *Chmielewski*, 8:13-CV-3170-T-27MAP, 2016 WL 7438432, (M.D. Fla. Sept. 16, 2016). There, the judgment debtor City of St. Pete Beach voted and approved of "restricted reserves." *Id*. at *1. The court recognized that "[b]ecause the full amount of the judgment, plus two years of post judgment interest, will be placed in a separate account from which the City cannot withdraw absent a Court order, I find that the City has objectively demonstrated a present financial ability to pay the judgment and has presented a financially secure plan for maintaining that ability during the period of an appeal." *Id*. at *1 (M.D. Fla. Sept. 16, 2016). Here, unlike the defendant in *Chmielewski*, the Defendants have not suggested placing any funds in a separate account that is inaccessible and of sufficient funds to satisfy the Final Judgments if affirmed on appeal.

Similar to *Chmielewski*, a court in the Northern District of Georgia found that a bond was not necessary where the defendant, the City of Atlanta, represented that the payment of any judgment against it would come from the airport's revenue fund. *Corey Airport Services, Inc. v. City of Atlanta*, 1:04-CV-3243-CAP, 2011 WL 13216938, at *2 (N.D. Ga. Apr. 6, 2011). The defendant in that case further represented that the airport maintains $40 million in unallocated money in that fund that could be used to satisfy the judgment and that the airport's other accounts have reserves of more than $100 million that are liquid and accessible. *Id*. The evidence presented

there, and the defendant's related representations are distinguishable from the demonstration by Defendants in this case. Here, Defendants have not indicated that they maintain a minimum amount of liquid assets, nor have they represented that any specific fund will be used to satisfy the Final Judgments.

In *Trade AM Int'l, Inc. v. Cincinnati Ins. Co.*, the court found that evidence of assets many multiples of the award of damages, substantial reserves, and the demonstration of previously appropriated funds, available for the purpose of paying judgments, was sufficient to waive the bond requirement. *Trade AM Int'l*, 1:08-CV-3711-ECS, 2012 WL 12957061, at *2 (N.D. Ga. Apr. 16, 2012). While Defendants here have presented evidence that each possesses assets many multiples of the amount of damages and has significant liquid assets, they have not indicated that they have appropriated any funds to be used to satisfy the Final Judgments entered against them if upheld on appeal.

In a Southern District of Florida case in which Royal Caribbean was a defendant, the court waived the bond requirement. *Goodloe v. Royal Caribbean Cruises, Ltd.*, 18-21125-CV, 2019 WL 12520072, at *1-2 (S.D. Fla. May 23, 2019). However, there, the court not only found "Defendant's ability to pay the $3,384,073.22 Final Judgment is so evident" but also required the defendant to furnish plaintiff a letter of undertaking. *Id*. That letter of undertaking provided by the judgment debtor's insurer, provided the same protections as a bond and the insurer agreed to satisfy the judgment should the judgment be afformed on appeal. Unlike that case, Defendants have not suggested the use of a letter of undertaking or any other securing device in place of a bond.

Defendants also cite to a Northern District of Illinois case for the proposition that where a moving party submits evidence demonstrating their financial stability, an argument that it might suffer some unforeseen financial disaster "is too speculative to merit consideration." *In re Oil Spill*

*by the Amoco Cadiz off the Coast of France on March 16, 1978*, 744 F. Supp. 848, 850 n. 2 (N.D. Ill. 1990). Defendants contend that any change in their ability to easily satisfy the Final Judgments against them is too speculative. Plaintiff argues that Defendants are subject to significant debts and have been meaningfully and recently negatively affected by an unforeseen disaster. It is easily recognized that the Covid-19 pandemic took a significant economic toll on Defendants from which each is still recovering. Given that recent history and the related impact on the financial strength of Defendants, the Court finds that, while speculative Plaintiff's arguments merit consideration.

After reviewing the cases cited by Defendant, the Court finds that a showing of significant assets is not sufficient by itself to demonstrate a means of remaining solvent during the pendency of appeal. In each case from this circuit in which the bond requirement was waived, the party seeking a stay without bond presented some plan or proposed the use of some securing device to keep sufficient funds to satisfy the judgment available if affirmed.

Although Defendants insist that their businesses will continue to operate as they have for decades and they will remain solvent, they fail to articulate a plan to keep the necessary funds accessible for satisfaction of the Final Judgments. The Defendants have not proposed a mechanism to keep the required funds in a manner that will render them readily available or suggested the use of an alternative securing device like the moving parties in cases where the bond requirement has been waived. The Court therefore finds that Defendants have not met their burden of presenting a plan or device to maintain the same degree of solvency through the appellate process.

### C.  Adequacy of Alternatives

Defendants propose that as an alternative to requiring a bond for the total amount of the Final Judgments, they should be required to pay a bond only on the amount of the Certified Claim. In support, Defendants cite *Slip N' Slide Records, Inc. v. Teevee Toons, Inc.*, where the court was

"faced with two untenable positions" and to resolve that problem determined that the party seeking a stay without bond "pledge not to dissipate assets *in addition* to the posting as security of 100% of the compensatory damage portion of the judgment." 05-21113-CIV, 2007 WL 1489810, at *3 (S.D. Fla. May 18, 2007) (emphasis in original).

However, unlike in *Slip N' Slide*, Defendants have not demonstrated that they are unable to or will be significantly prejudiced if required to post the total bond amount. The Court therefore finds no basis to reduce the amount of the bond, although other alternative security may certainly be appropriate. *See Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*, 8:17-CV-190-T-23SPF, 2020 WL 11423017, *1 (M.D. Fla. Nov. 13, 2020) ("The formidable size of [plaintiff's] judgment commends flexibility in allowing an alternative security. Defendant may offer an unconditional letter of credit, which serves much the same purpose as other security devices." (cleaned up)); *Lary v. Boston Sci. Corp.*, 11-CV-23820, 2015 WL 1000966, at *2 (S.D. Fla. Mar. 6, 2015) ("[T]he defendants have substantial cash or cash equivalents on hand to post the required amount plus 10% with the Court, thus not incurring the expense of a bond.").

Because Defendants have not demonstrated a financially secure plan for maintaining solvency during the appeal, nor have Defendants presented an adequate alternative form of security, the Court finds no basis to waive the bond requirement.

IV.    **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion, **ECF No. [455]**, is **DENIED**. Execution of the Final Judgments will be stayed upon posting of a supersedeas bond in the amount of 110% of the judgment **by no later than April 17, 2023**. In the alternative, and if agreed to by the parties, the Defendants may propose an adequate alternative form of security for the Court's consideration.

**DONE AND ORDERED** in Chambers at Miami, Florida on March 13, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record